Nereida ALVAREZ

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education and Welfare.

Civ. A. No. 79–1788.

United States District Court,
E. D. Pennsylvania.

Feb. 4, 1980.

Michael M. Goss, Philadelphia, Pa., for plaintiff.

William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LUONGO, District Judge.

This is an action brought pursuant to section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3),[1] for judicial review of the Secretary's denial of disability benefits under the Supplemental Security Income Program, specifically 42 U.S.C. § 1382c(a)(3). Both plaintiff and the Secretary have moved for summary judgment. The magistrate, to whom the case was referred for Report and Recommendation, recommends that the decision of the Secretary be reversed and judgment entered in favor of plaintiff. I agree that the disposition recommended by the magistrate is warranted on this record, although I do not adopt his report in its entirety.

1. This section incorporates the review provision of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The facts outlined in the magistrate's report, which is appended hereto, are essentially correct. Although the discrepancy is of marginal significance, I note that the magistrate fixes 1971 as the year when plaintiff last worked; the record, however, reveals that plaintiff was last employed in the first quarter of 1973.[2] Exhibit 34, Administrative Record (Document No. 4) at 207–09. During the past several years, plaintiff has received medical treatment for a variety of physical ailments,[3] and she has been in treatment, apparently on a weekly basis, at the Northeast Community Mental Health (COMHAR) facility since November 1976. Transcript & Exhibits 5, 15, 35, Administrative Record (Document No. 4) at 53–56, 132, 159, 211. In addition, plaintiff was examined subsequent to the hearing on disability by a psychiatrist and by a specialist in internal medicine and cardiology, both of whom were employed by the Social Security Administration.

The ALJ concluded that plaintiff did not have a disabling physical or mental impairment. With respect to disabling mental impairment, I agree with the magistrate that this conclusion is not supported by substantial evidence. As the magistrate points out, the ALJ improperly discounted the psychiatric diagnoses as evidence of mental disability. The ALJ characterized the reports of Dr. Heller, the treating psychiatrist at the COMHAR facility who diagnosed plaintiff's mental condition as severe situational depression, as "vague and non-specific" and "without substantiating information." Decision, Administrative Record (Document No. 4) at 16. The ALJ also rejected the diagnosis of latent schizophrenia submitted by Dr. Wallace, the psychia-

trist employed by the Social Security Administration, Exhibit 35, Administrative Record (Document No. 4) at 212,[4] stating that Dr. Wallace's conclusions were "not consistent with his findings and are not supported by substantial demonstrable proof." Decision, Administrative Record (Document No. 4) at 16.

The ALJ discredited Dr. Wallace's diagnosis by selectively extracting from his report certain observations about plaintiff's orientation, judgment, and intellect, and coupling these observations with her findings that plaintiff was able to discharge her household chores and to care for her children. The ALJ also noted that plaintiff's neighbor testified that plaintiff's behavior was normal and that she got along well with others. *Id.* In addition, the ALJ observed that plaintiff had engaged in substantial gainful employment through 1974. *Id.* From this evidence, the ALJ concluded that plaintiff's "so-called situational depression and symptoms imposed very little restriction on her[; that t]he evidence contraindicates . . . mental impairments disabling in nature[; that her] mental condition create[s] no significant limitations[; and that s]he retains the residual capacity to meet the physical and mental demands of her former work." *Id.* at 16–17.

▪ While the ALJ may choose between contradictory medical opinions or reject a medical opinion that is contradicted by other evidence of record, she "is not free to set [her] own expertise against that of a physician" who had personally examined the claimant. *Gober v. Mathews*, 574 F.2d 772, 777 (3d Cir. 1978). The ALJ appears to have done just that in this case. She took

2. The ALJ's statement that plaintiff's earnings record furnished by the Social Security Administration shows wages of $2264.76 in 1972, $2454.24 in 1973, and $2088 for 1974 finds no support in the document purportedly relied upon or indeed anywhere in the record. Plaintiff's earnings statement shows wages totaling $2534.32 for the four quarters of 1972 and $266.55 for the first quarter of 1973. *Compare* Decision, Administrative Record (Document No. 4) at 10, *with* Exhibit 34, Administrative Record (Document No. 4) at 207–09. No earnings appear after the first quarter of 1973, and

the statement is current through June 1977. Exhibit 34, *supra.*

3. Unlike the magistrate, I hesitate to characterize plaintiff's physical complaints as "disabilities", inasmuch as disability is the ultimate issue here. *See* Report and Recommendation at 2.

4. "Diagnostically, [plaintiff] is best described as a 'panneurotic' or 'borderline' personality. The DSM II classification is latent schizophrenia (295.5)."

out of context Dr. Wallace's more favorable impressions of plaintiff's behavior, thereby distorting the psychiatrist's overall picture of plaintiff's mental health to reach a conclusion that directly contradicted Dr. Wallace's unfavorable diagnosis and prognosis. Yet, there is nothing in this record, other than the ALJ's individual assessment of plaintiff's symptoms, to support the conclusion that Dr. Wallace's diagnosis of mental impairment did not comport with his observations. There is certainly no contradictory *medical* evidence to suggest either that Dr. Wallace incorrectly evaluated plaintiff's mental state or that his methodology deviated from accepted medical practice. Moreover, the nonmedical factors upon which the ALJ bases her conclusion of nondisability are either consistent with the diagnosis advanced by Dr. Wallace or find negligible support in the record.

Plaintiff's ability to take care of her house and her children does not contradict Dr. Wallace's diagnosis. Indeed, he took into account that plaintiff "spends her days absorbed in the household chores and child-rearing tasks." Exhibit 35, Administrative Record (Document No. 4) at 212. He concluded, however, that although there was only moderate deterioration in plaintiff's personal habits, her ability to relate to others was nevertheless severely impaired and her activities and interests were severely limited. Plaintiff's friendship with her neighbor, even given the frequency of the visits, does not, in my view, constitute substantial evidence either to undermine the doctor's conclusion or to support the ALJ's finding that "there is no marked restriction in . . . [plaintiff's] ability to relate to others." [5] Finally, as I noted in footnote 2, *supra*, the record contradicts the ALJ's finding that plaintiff had engaged in substantial gainful employment as late as 1974.

Even were that finding to have been correct, however, plaintiff's ability to work in 1974 would cast little doubt on this diagnosis made in 1978.[6]

I recognize that the ALJ was concerned by the absence in the record of what she termed "acceptable and credible documentation" and "substantial demonstrable proof." Decision, Administrative Record (Document No. 4) at 16. And I would probably agree that the naked diagnosis of situational depression submitted in the several reports of Dr. Heller was, standing alone, insufficient to establish a disabling mental impairment. I cannot agree, however, that the diagnosis of Dr. Wallace, the psychiatrist employed by the Social Security Administration, was inadequate and unacceptable. Dr. Wallace personally examined plaintiff and he noted that in the course of his examination plaintiff "exhibited a wealth of psychiatric symptomatology." Exhibit 35, Administrative Record (Document No. 4) at 212. His report evidences that his diagnosis and prognosis were based not only on plaintiff's representations of her symptoms but also on his own observations and evaluation of her responses during the interview.

■ The ALJ's principal stumbling block appears to be that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less precise than those in the field of medicine. However, where, as here, there is no other reason to question the diagnostic technique, the relative imprecision of the psychiatric methodology and the absence of substantiating documentation is not a sufficient basis upon which to reject the report. *See, e.*

---

5. In her evaluation of the evidence, the ALJ notes that plaintiff's neighbor testified that plaintiff "got along well with others." Decision, Administrative Record (Document No. 4) at 16. This either mischaracterizes or assumes too much from the exchange between the ALJ and the witness, which reveals only that the *witness* "got along all right" with plaintiff. Transcript, Administrative Record (Document No. 4) at 112.

6. I note that this error with respect to plaintiff's employment record may have prompted the ALJ to doubt plaintiff's credibility with respect to her subjective complaints. *See* Decision, Administrative Record (Document No. 4) at 10, 16, 17. Because the psychiatric evidence alone is dispositive here, the degree to which the ALJ's error may have influenced the credibility determination is irrelevant.

*g., Taddeo v. Richardson,* 351 F.Supp. 177, 180 (C.D.Cal.1972) (letter from regular attending physician, plus psychiatric report and intake interview constitute medically acceptable technique); *cf. Kennedy v. Weinberger,* 369 F.Supp. 336, 339–40 (E.D.Pa. 1974) (Lord, Ch.J.) (general conclusions or naked medical diagnoses may establish disability absent substantial evidence to contrary).

There are no objective laboratory findings to corroborate Dr. Wallace's diagnosis. Nevertheless, there are several other medical opinions in this record which lend support to, rather than cast doubt upon, his conclusion. I have already noted that Dr. Heller was regularly treating plaintiff at the COMHAR facility for situational depression. Dr. Beckett, who treated plaintiff a number of times at Episcopal Hospital, noted that plaintiff might possibly suffer from psychogenic housewife syndrome. Exhibit 32, Administrative Record (Document No. 4) at 199. Dr. Lizardo, whose specialty is pediatrics but who treated plaintiff on several occasions, reported that plaintiff suffered anxiety neurosis. Exhibit 18, Administrative Record (Document No. 4) at 169. Finally, Dr. Goodman, the internist and cardiologist employed by the Social Security Administration to examine plaintiff, reported that his examination revealed an "extremely anxious" and "extremely nervous patient." Exhibit 37, Administrative Record (Document No. 4) at 217. Dr. Goodman concluded that in light of his significant physical findings as well as the objective evidence, which revealed no physiological basis for many of plaintiff's complaints, "the anxiety factor and psychotherapeutic regime are certainly major factors in her disability." *Id.* at 218.

 The cumulative effect of these opinions leads me to conclude that the Secretary's decision is not supported by substantial evidence, and that plaintiff has met her burden of establishing a disabling mental impairment. In this case, because the medical evidence is in and of itself sufficient to establish disability, there is no need to consider the vocational factors that are ordinarily attendant to a finding of disability. According to section 416.903(d) of the regulations promulgated by the Secretary, "[w]here an individual's impairment(s) meets the duration requirement and is either listed in Part A of Appendix 1 or is determined to be medically the equivalent of a listed impairment, a finding of disability shall be made without consideration of the vocational factors." 20 C.F.R. § 416.903(d). Dr. Wallace's uncontradicted diagnosis of latent schizophrenia, manifested by, *inter alia,* severe depression, limited activities and interests, and a seriously impaired ability to relate to other people, falls into this category of impairments. *See* 20 C.F.R. Part 416, Subpart I, App. 1, 12.03.[7] After considering Dr. Wallace's prognosis that increase in plaintiff's level of functioning is unlikely and that psychotherapy would probably be ineffective, I conclude that plaintiff's mental impairment is of sufficient severity and of sufficient duration to warrant a finding of disability.

In light of the foregoing, I will enter an order reversing the Secretary's decision and granting summary judgment for plaintiff on the issue of disability. I will also remand the case to the Secretary for a determination and award of benefits.

### APPENDIX

### REPORT—RECOMMENDATION

January 9, 1980.

RICHARD A. POWERS, III, United States Magistrate.

This is an action under § 205(g) of the Social Security Act (Act), as amended, 42 U.S.C. § 405(g) (1974), to review a final

---

7. 12.03 *Functional psychotic disorders* (mood disorders, schizophrenias, paranoid states). With both A and B:

 A. Manifested persistence of one or more of the following clinical signs:
 1. Depression (or elation); or
 2. Agitation; or
 3. Psychomotor disturbances; or

 4. Hallucinations or delusions; or
 5. Autistic or other regressive behavior; or
 6. Inappropriateness of affect; or
 7. Illogical association of ideas;
 B. Resulting persistence of marked restriction of daily activities and constriction of interests and seriously impaired ability to relate to other people.

decision of the Secretary of Health, Education and Welfare, (Secretary) which denied the plaintiff's claim for Supplemental Security Income due to disability since 1971.

Plaintiff is thirty-seven (37) years of age, a high school graduate from Puerto Rico, and has not had any special vocational or on the job training. Her work history consists of working as a welder of small electronic parts into radios, and as a power sewing machine operator. She left her job as a welder because the smoke aggravated her allergies. She left her job as a sewing machine operator because the dust in the factory also aggravated her allergies and her asthma; the noise in the factory caused her nervous headaches, and her diabetes caused her to be dizzy and lightheaded. She last worked in 1971.

Plaintiff has been under the care of various doctors since 1972 for many different physical ailments, including: dizziness, breathing difficulties, headaches, bladder problems, diabetes, asthma, rhinitis, and pains in the lower back, pelvic and neck areas. She has been hospitalized on several occasions over this period for treatment of these ailments. Plaintiff is currently under medication for asthma, diabetes, nerves, inability to sleep, and bladder problems. There is ample medical evidence on the record which documents the plaintiff's physical disabilities.

Plaintiff has a history of psychiatric illness dating back to when she was sixteen (16) years of age. She has also attempted to commit suicide by taking sleeping pills. (tr. 96). In addition, three (3) physicians, Dr. Heller, Dr. Goodman, and Dr. Wallace, have found that the plaintiff possesses severe emotional, nervous psychoneurotic disorders and psychiatric treatment has been recommended. (tr. 192, 215). It is significant to note that Dr. Goodman and Dr. Wallace were experts employed by the Social Security Administration.

The medical opinions of Doctors Heller (tr. 192), Goodman (tr. 218) and Wallace [1] (tr. 212–213), were criticized and discounted by the ALJ in her decision. An ALJ is not free to set her own expertise against that of physicians who present competent medical evidence, especially when the evidence ignored is that reached by experts employed by the Social Security Administration. *Fowler v. Califano,* 596 F.2d 600 (3 Cir. 1979). Although expert medical evidence is not conclusive upon the legal question of disability, it is to be considered, and where it is not controverted by substantial evidence to the contrary, it is entitled to great weight. *Rossi v. Califano,* 602 F.2d 55 (3 Cir. 1979); *Randall v. Flemming,* 192 F.Supp. 111 (W.D.Mich.1961). Although much of the evidence is of a psychological nature, it is clear that the Act was intended to apply not only to physical ailments, but also to mental conditions, and this evidence cannot be ignored. *Rayborn v. Weinberger,* 398 F.Supp. 1303 (N.D.Ind.1975). Were there a significant professional disagreement among the physicians, the ALJ would have been able to resolve the issues, but in this case all of the expert medical testimony confirms and supports the plaintiff's disability. *Gober v. Matthews,* 574 F.2d 772 (3 Cir. 1978).

The ALJ refused to call a vocational expert to testify as to the plaintiff's ability to do her former work, but still concluded that she possesses such ability. Once medical experts have been introduced substantiating a medical impairment, as they have in this case, and the plaintiff has testified as to her inability to work, the ALJ is required to produce a vocational expert to testify on the plaintiff's ability to find substantial gainful employment. *Garrett v. Richardson,* 471 F.2d 598 (8 Cir. 1972). There is no competent medical testimony that the plaintiff is capable of performing the physical activities which would be required by

---

1. Dr. Wallace diagnosed the plaintiff as "pan neurotic" or "borderline personality". "DSM II Classification is latent schizophrenia". (tr. 212).

. "Prognosis is poor for any increase in her level of functioning. She would need to be motovated (sic) for intensive treatment and as her insight is lacking, psychotherapy would probably not be effective." (tr. 213)

either her former job or any other employment available to her. *Dobrowolsky v. Califano*, 606 F.2d 403 (3 Cir. 1979).

In addition, the ALJ chose to ignore any credibility evidence which was favorable to the plaintiff in the record. For example, the ALJ opines that a visiting neighbor, Mrs. Gonzalez, testified that plaintiff's behavior was "normal"[2] (tr. 16) during the household visits which she had with the plaintiff, but the ALJ ignored the testimony of the same neighbor who stated that sometimes she saw the plaintiff start crying when she had her "nerves" which caused her to drop a glass of water from her hand to the floor. (tr. 115). The ALJ simply dismisses the claims of disabling pain without any evidence that this claimant is a malingerer or a fabricator. The fact that she can clean her house and do household chores does not mean that she can go outside of the house (to which she retreats from the outside world) to do substantial work. Her husband supports her claims; the neighbor and the doctors support her claims, and the Secretary's finding is without any substantial evidence.

Accordingly, we make the following

## RECOMMENDATION

Now, this 9th day of January, 1980, IT IS RESPECTFULLY RECOMMENDED that the plaintiff's motion for summary judgment should be GRANTED, and the finding of the Secretary should be REVERSED. *Ingram v. Richardson*, 471 F.2d 1268 (6 Cir. 1972).

2. At no time during her testimony did Mrs. Gonzalez describe the plaintiff's behavior as *normal*. (tr. 104–115).