**Robert R. ESPINOSA, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. No. 82–1299.

United States District Court, D. Kansas.

June 8, 1983.

Joseph Bribiesca, Wichita, Kan., for plaintiff.

Steven K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## OPINION AND ORDER

THEIS, District Judge.

This is an action under 42 U.S.C. § 405(g) for judicial review of a denial of a claim for disability benefits under the Social Security Act. Defendant has moved for summary affirmance of the Secretary's decision and plaintiff has filed a counter motion for summary judgment.

On May 18, 1973, plaintiff filed an application for disability insurance benefits, alleging that disability began on March 5, 1973. The claim was allowed and benefits were awarded based on an onset of disability on March 5, 1973.

On March 31, 1981, the Social Security Administration (SSA) notified plaintiff that it had determined that he was no longer disabled as of October, 1980, and the last disability check to which he was entitled was for December, 1980. On April 6, 1981, plaintiff was notified that he had been overpaid in disability insurance benefits for the three months after December, 1980. Plaintiff requested reconsideration and the original decision was determined to be correct. At plaintiff's request, a hearing was held on December 10, 1981. On January 26, 1982, the Administrative Law Judge (ALJ) determined that plaintiff was not disabled at any time after October, 1980, but that plaintiff was without fault in receiving overpayment and return of the overpay-

ment should be waived. On March 17, 1982, the Appeals Council of the SSA affirmed the decision of the ALJ, which decision now stands as the final decision of the Secretary.

A review of the record reveals that plaintiff was born in Mexico on April 16, 1932. (Tr. 31.) Plaintiff's education was in Mexico and he completed only the second grade. His education, of course, was in Spanish. (Tr. 32.) His work experience consisted solely of heavy manual labor and for the fifteen years prior to the onset of his disability he worked as a beef lugger. (Tr. 34, 36–37.)

Plaintiff testified that he had been treated for a sinus condition which seemed to get worse, especially when there were weather changes. (Tr. 39–40.) Plaintiff testified about having a spinal fusion and about having back and leg pain. (Tr. 40.) He testified that he could not bend, lift objects, or walk long distances without pain. He had the pain whether standing or sitting, and had difficulty sitting still for too long. (Tr. 41–42.) He also testified he had difficulty understanding or speaking English (Tr. 32), and that he could not read English at all.

The medical evidence revealed that Dr. C.H. Rhoden, an internist, concluded in 1973 that claimant suffered from significant back disease and uncontrolled blood pressure, lung disease and chronic sinus disease. He also noted that plaintiff had difficulty in communicating in English. Dr. Rhoden's opinion was that plaintiff's back disease and blood pressure were disabling. (Tr. 94–95.)

On February 28, 1974, plaintiff was examined by Dr. H.O. Anderson, an orthopedic surgeon with the Wichita Clinic. The patient's history revealed that plaintiff had been a patient of the Clinic since 1965, after injuring his back while working. He was disabled and did not respond to conservative measures, including a body cast. A spinal fusion was performed on December 23, 1965 by Dr. Lance. Plaintiff continued to be seen with back problems through 1969, when he quit his job due to his back problems. After examination, Dr. Anderson concluded that there were sufficient

findings to account for some of plaintiff's discomfort, but not to the extent of total disability. Dr. Anderson said plaintiff's diabetes and hypertension should be evaluated by an internist, and stated, from an orthopedic standpoint, plaintiff would not be a good candidate for working in a flexed position too long, or for much lifting, walking or stair climbing. He thought sedentary work could be done. (Tr. 101–102.)

On October 3, 1980, plaintiff was examined by Dr. R.L. Sifford, a consulting physician for the government. He stated that plaintiff had a "huge list of complaints," and a "totally normal" physical examination. (Tr. 111.) He noted, however, that plaintiff did seem to have "degenerative disc disease by x-ray." (Tr. 112.) Dr. Sifford added that plaintiff "has an extremely severe anxiety reaction with a multiplicity of complaints on a psychomatic basis" and could easily do sedentary, mild and moderate work." (Tr. 112.)

Plaintiff was also seen once by Dr. C.J. Kurth, a psychiatrist retained by the government. Dr. Kurth issued a report on May 6, 1981, in which he noted plaintiff's difficulty with English. (Tr. 122.) Dr. Kurth stated:

"When one makes the mistake of asking him what bothers him he starts a 'Litany of Complaints' and it is very difficult to shut him off. The details and ramifications of his multiple complaints is (sic) well described in the above mentioned reports of the above named physicians." (Tr. 123.)

Dr. Kurth also stated that plaintiff "has a typical Mexican-American personality." (Tr. 124.) He concluded that plaintiff had no disabling psychological illness and "if he were motivated," could perform light work.

On May 5, 1981, plaintiff was examined on a consultative basis by Dr. James Henderson, an internist, whose report dated May 18, 1981, stated that he found "significant restriction motion of the lumbar spine" and also diabetes and hypertension. (Tr. 126–127.)

On September 3, 1981, Dr. Ernest Tippen, an ear, nose and throat specialist, reported he had treated plaintiff for three years for severe allergic rhinitis. He stated plaintiff should not be employed in an area with dust or rapid temperature changes. (Tr. 141.)

On October 28, 1981, Dr. Val Brown issued a report concerning his treatment of plaintiff. He had treated plaintiff since February, 1972. Plaintiff's symptoms had increased in severity since then. Dr. Brown stated that plaintiff had hypertension with a fair degree of control, and diabetes with a fair degree of control. Plaintiff had significant allergic rhinitis which caused recurring episodes of chronic bronchitis. He had a spinal fusion and had complained of low back pain since that time. He had had anxiety and tension due to his unemployment, and had become quite frustrated and depressed. Dr. Brown concluded that plaintiff was employable at that time. (Tr. 149.)

As of October 23, 1981, plaintiff was being treated with seven different prescription medications and was also taking Anacin and Bufferin. (Tr. 146.)

The ALJ, Donald F. Gust, on January 28, 1982, found plaintiff, at age 49, was a younger individual under the regulations, that his condition precluded him from returning to his previous work, but found plaintiff to be "capable of performing significant work activity of a light nature in a controlled environment." The ALJ found that plaintiff "is limited with respect to the use of the English language, especially in reading and writing, but not to the extent that he could be considered illiterate under the Regulation." He found that plaintiff no longer experienced pain of sufficient severity to preclude a "wide range" of light exertional activity. The ALJ applied his findings to the regulatory "grid" and concluded that, as of October, 1980, plaintiff was no longer under a disability. (Tr. 14–15.)

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is such evidence as a reasonable

person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ While it is not the duty of the Court to reweigh the evidence, the Court may not mechanically accept the findings of the Secretary but must scrutinize the entire record to determine whether the conclusions reached are rational. *Martin v. Schweiker,* 562 F.Supp. 912 (D.Kan.1982). The Court cannot affirm the Secretary's decision by isolating a few facts and calling them "substantial evidence." *Cline v. Califano,* No. 78–4166 (D.Kan. Aug. 31, 1979). In applying these standards, the Court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled. *Dvorak v. Celebrezze,* 345 F.2d 894 (10th Cir.1965).

■ After a careful examination of the records, the Court finds that the opinion of the ALJ is not supported by substantial evidence. In addition, the ALJ has misapplied the regulations and failed to fulfill his duty to fairly develop the administrative record.

■ It is difficult to discern the basis of the ALJ's opinion that claimant's medical problems and, especially, his pain, are insufficient to render him disabled. Dr. Brown, plaintiff's primary treating physician, is of the opinion plaintiff is disabled, and his opinion is bolstered by numerous clinical indicia. The opinion of the treating physician, while a conclusion upon an ultimate issue, is entitled to great weight. *Broadbent v. Harris,* 698 F.2d 407 (10th Cir.1983); *Cavitt v. Schweiker,* 704 F.2d 1193 (10th Cir.1983). Dr. Rhoden also opined that plaintiff was disabled. There is, as noted, significant physical evidence supporting these conclusions, notably plaintiff's spinal fusion, x-rays, pulmonary tests and blood tests.

The ALJ apparently relies on the opinions gleaned in one time examinations, of the two consultative physicians retained by the SSA, presumably to review and lessen the disability rolls. Dr. Sifford stated that plaintiff's examination was totally normal, but in the same report, admitted evidence of disc disease and obstructive pulmonary disease existed. Dr. Kurth, making a psychiatric examination only, displayed racial stereotyping in his descriptive diagnosis of plaintiff as some type of malcontent. According to Dr. Kurth, plaintiff "is a typical Mexican-American," whatever that is supposed to mean. He also asked plaintiff what his complaints were and when plaintiff responded, Dr. Kurth laments asking the question and calls plaintiff's response a "Litany of Complaints." Yet, according to a great deal of medical evidence, there are numerous medical problems afflicting plaintiff. Should he have kept silent and not answered Dr. Kurth's inquiries? Dr. Kurth's report can be of no value to any fair-minded person and appears to be the product of an unfortunate mind-set.

■ Of course, reports of government consultative physicians who examined plaintiff only once, are accorded little weight, especially when they are inconsistent with reports of treating physicians. *Broadbent v. Harris,* supra; *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982).

In addition to the medical evidence, there is the testimony of plaintiff about his pain. Unfortunately, plaintiff's difficulty in expressing himself in English may have weakened the impact of his testimony. The testimony is not as complete as it should be, as ALJ Gust appeared intent on sharply curtailing plaintiff's testimony. Despite the obvious difficulty plaintiff had with English, his attempts to explain his problems were summarily cut off by the ALJ no less than seven times. One such example follows:

"Q. Could you give us an example of something you tried to lift that bothered you (sic) back?

A. Even if I try to—to bend down to pick up something I have problems. Even try to pick it up I have to do with a hard work especially with this kind of printed work ads, in these days, you know.

ALJ: Okay, hold it. Next question.

Q. Can you bend at the waist without having pain?

A. No, it—

ALJ: Now wait, just answer the question. You don't have to make the speech. The answer's no. Okay, go ahead. Next question."

(Tr. 41.)

■ The ALJ has a duty to fully develop the facts. When he fails to make full inquiry and curtails a claimant's description of his condition, the claimant is denied meaningful access to the administrative process. See *Smith v. Sec'y of HEW,* 587 F.2d 857 (7th Cir.1978); *McGee v. Weinberger,* 518 F.2d 330 (5th Cir.1975). The hearing gives the claimant the opportunity to testify, and such testimony should be allowed to develop fully without the claimant being intimidated. It unfortunately appears that cursory treatment of claimants is becoming all too common. See *Thomas v. Schweiker,* No. 81–1188 (D.Kan. Mar. 31, 1982), wherein Judge Kelly notes:

"As a final note, this Court feels after reading the transcript of the administrative hearing that the plaintiff's claim was considered in a cursory and unrealistic manner by the ALJ.... the ALJ took only twenty minutes to ask the bare number and type of questions necessary to fit the plaintiff into the 'grid system.' ... Equity and good conscience require that a more sensitive and exhaustive approach be taken by the ALJ to insure each individual's claim is fairly considered." (p. 9)

Nevertheless, plaintiff did testify as to the severity of his pain when bending, lifting, walking, standing and sitting. The ALJ made no finding that plaintiff's testimony was not credible and, indeed, would appear to have no basis for doing so, except, perhaps, the highly suspect report of Dr. Kurth. If the ALJ did not believe plaintiff, he should have made specific findings supporting his belief. *Marcus v. Califano,* 615 F.2d 23 (2nd Cir.1979).

The ALJ also failed to consider the psychological and emotional factors involved in plaintiff's pain. Dr. Brown, the treating physician, refers to plaintiff's severe emotional problems and even Dr. Sifford, the consultative physician, noted plaintiff's psychological overlay. While Dr. Sifford and the SSA may believe that the fact a patient has psychological aspects which hamper him to a degree greater than might be indicated by physical examination, it is clearly error to ignore the psychological overtones of medical diagnoses. *Cole v. Harris,* 641 F.2d 613 (8th Cir.1981); *Martin v. Schweiker,* supra. A person whose pain is partly psychological suffers as greatly as one whose pain is purely physical, and both may be disabled by their pain. As was noted by another court, in *Brand v. Secretary of HEW,* 623 F.2d 523, 526–527 (8th Cir.1980):

"Most injuries or illnesses produce physiological or functional consequences and depending upon the physical makeup of the person, the level of pain involved may or may not produce a disabling injury. In *Landness v. Weinberger,* 490 F.2d 1187 (8th Cir.1974), we wrote:

These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being. Different people react in markedly different ways to similar injuries. A back condition may affect one individual in an inconsequential way, whereas the same condition may severely disable another person who has greater sensitivity to pain or whose physical condition, due to age, obesity, deformity, or general physical well-being is generally deteriorated."

The Court concludes that the ALJ failed to give due consideration to the expert opinion of the treating physicians, to plaintiff's pain and psychological problems, and to plaintiff's own testimony. The ALJ placed excessive reliance on the two sketchy reports of SSA-retained physicians. There is, in sum, no substantial evidence that plaintiff is not disabled.

In addition, the Secretary has totally failed to meet his burden under *Salas v. Califano,* 612 F.2d 480 (10th Cir.1979), which states that where plaintiff has met the initial burden of showing he cannot return to his previous occupation, the Secre-

tary has the burden of showing that he could perform some other kind of substantial work in the economy.

This burden has traditionally been met through vocational expert testimony. Recently, the Secretary has attempted to substitute for such evidence the use of a "grid system," described at length in *Walker v. Harris,* 504 F.Supp. 806 (D.Kan.1980). Most courts have recognized the general validity of the grid system. E.g., *Santise v. Schweiker,* 676 F.2d 925 (3rd Cir.1982); *McCoy v. Schweiker,* supra; *Kirk v. Sec'y of HHS,* 667 F.2d 524 (6th Cir.1981); *Gagnon v. Sec'y of HHS,* 666 F.2d 662 (1st Cir.1981); *Contra Campbell v. Sec'y of HHS,* 665 F.2d 48 (2nd Cir.1981), *cert. granted,* 457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982).

■ The courts which recognize the overall validity of the grid scheme, also recognize, however, that the grid can only be applied in limited situations. First, the characteristics of the claimant must *identically* match the grid. *McCoy,* supra, at 1146; *Santise,* supra, at 934. Even more importantly, residual functional capacity concerns only the physical ability, particularly strength, to perform certain exertional levels. *Nonexertional impairments foreclose the use of the grid. McCoy,* supra; *Gagnon,* supra; *Nicks v. Schweiker,* 696 F.2d 633 (8th Cir.1982); *Thomas v. Schweiker,* supra; *Marshall v. Schweiker,* No. 81–1536 (D.Kan. April 21, 1983).

In this case the characteristics of the claimant do not match those in the grid and, more importantly, nonexertional factors foreclose mechanical application of the grid. The Court would note one major discrepancy between the record and the ALJ's application of the grid. The ALJ used the grid system on the basis of his finding that plaintiff is "not illiterate." There is not a scintilla of evidence, much less substantial evidence, to support this finding. The record is replete with evidence of plaintiff's difficulty with spoken, much less written, evidence. Plaintiff testified that he could not read English. His education was limited to the second grade, in Mexico. There is no evidence of record that he could read English at all. The SSA's own regulations define illiteracy, at 20 C.F.R. § 404.-1564(b)(1) as:

"Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling."

At first glance, it is difficult to perceive how or why the ALJ could have made his finding that claimant was not illiterate. An examination of the grid system reveals that, as long as claimant was age 49 or younger, it made no difference under the grid whether he was classified as literate or illiterate. When claimant turned 50, however, a finding that he was illiterate would, in conjunction with the other findings of the ALJ, cause claimant to be classified as disabled rather than not disabled. The only possible explanation for the blatantly incorrect characterization of claimant as not illiterate is the SSA's dogged fixation on reduction of expenses through unfounded denial of benefits to the helpless. Such actions by the SSA are becoming all too frequent. See *Marshall v. Schweiker,* supra; *Thomas v. Schweiker,* supra; *Lauber v. Schweiker,* No. 81–1532 (D.Kan. Nov. 1, 1982).

Nonexertional factors in this case make any use of the grid system insufficient to meet the Secretary's burden. Chronic impairment of respiratory functions due to dust, allergies and temperature are clearly nonexertional factors. *McCoy,* supra, at 1148; *Thomas v. Schweiker,* 666 F.2d 999 at 1004; *Marshall v. Schweiker,* supra. The ALJ appears to recognize that claimant requires a controlled environment in order to properly breathe. The use of the grid in such a situation is wholly unsuitable and the Secretary should have produced vocational evidence showing evidence of specific work the claimant could perform. Likewise, claimant's pain, in conjunction with his other limitations, is a nonexertional factor that may prevent him from engaging in the full range of jobs contemplated by the

grid system. *Gagnon,* supra, at 666; *McCoy,* supra, at 1148; *Marshall,* supra. For these reasons, use of the grid was error and the Secretary has failed to carry her burden of demonstrating work this individual claimant could perform. As was noted by Judge Garza, in *Perez v. Schweiker,* 653 F.2d 997, 1000–1001 (5th Cir.1981):

"These tables in the regulations possess a certain tidiness which might create a temptation to plug in variables as if one was programming a computer which would print out the correct results. Fortunately for our society as well as our legal system, we are not yet to the point where a human being with particular and unique problems is declared disabled or not based upon an impersonal and mechanical formula."

In light of the strong evidence supporting plaintiff's claim of disability, the almost nonexistent evidence supporting the ALJ's findings concerning plaintiff's medical conditions, pain, and literacy, the misapplication of the grid system and the failure of the ALJ to allow full development of claimant's testimony, the Court cannot affirm the Secretary. It has been the general policy of this Court to remand these cases for further consideration when the administrative denial is not supported by substantial evidence. In this case the Court sees no purpose that would be served by such a remand except, perhaps, further delays in restoring this clearly disabled person to the disability rolls. The Court is convinced the evidence supports entry of summary judgment in favor of plaintiff. This individual has undergone a spinal fusion and suffers substantial pain, and in addition suffers from severe allergies, hypertension, lung disease and diabetes. He has almost no education, no job skills and is clearly illiterate. The Court believes the only just course is to order a restoration of benefits commencing with the date he was removed from the disability program. See *Lauber v. Schweiker,* supra; and *Thomas v. Schweiker,* supra, in which Judge Kelly of this Court entered similar orders.

IT IS THEREFORE ORDERED that defendant's motion for summary affirmance is overruled.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is hereby granted.

IT IS FURTHER ORDERED that this case be remanded with instructions to award plaintiff the insurance disability payments for which he has established eligibility, in accord with this opinion.