Jesse O. TUCKER, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 90–1023–T.

United States District Court, D. Kansas.

Nov. 5, 1991.

David H.M. Gray, Hiebsch, Gragert, Hiebert, Gray & Davisson, Wichita, Kan., for plaintiff.

Stephen K. Lester, U.S. Atty.'s Office, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is a proceeding under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Jesse Tucker, the claimant, moves for summary judgment (Doc. 12), seeking a ruling that he has been mentally and physically disabled since November 1982. The defendant counters with a motion to affirm the Secretary's decision to deny disability benefits. (Doc. 14). At issue is whether the Secretary's denial of the plaintiff's claim is supported by substantial evidence. For the reasons articulated below, the court reverses the Secretary's decision with respect to the plaintiff's mental disability claim, and affirms the Secretary on the physical disability claim.

## I. PROCEDURAL BACKGROUND

Plaintiff Tucker originally filed for disability insurance benefits on January 12, 1984, alleging November 1983 as the onset of his disability. His application was denied initially on April 5, 1984 and on reconsideration on August 1, 1984. Plaintiff, who was unrepresented by counsel at the time, failed to make any further appeal.

On December 8, 1987, more than three years later, plaintiff again applied for disability benefits, this time alleging May 1, 1984 as the onset date. Plaintiff's application was denied on initial determination and on reconsideration. With the aid of counsel, plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ refused to reconsider the plaintiff's previously adjudicated claim, finding "no basis for reopening the determinations on the claimant's previous application." (R. 13). The ALJ, however, addressed the merits of plaintiff's claims with respect to the unadjudicated period between August 1, 1984 (the date his original application became final) and December 31, 1984 (the date his insured status expired), and found that he was not disabled "at any time on or before December 31, 1984." (R. 18). Plaintiff's appeal to the Appeals Council of the Social Security Administration was denied. The decision of the ALJ, therefore, stands as the final decision of the Secretary. Plaintiff now brings before this court an action pursuant to 42 U.S.C. § 405(g), requesting review of the Secretary's decision.

## II. FACTUAL BACKGROUND

Jesse Tucker was born on August 1, 1942. He has a ninth grade education. He worked as a flour mill laborer until 1979 when he started his own tree trimming business. Plaintiff's business operations terminated sometime between 1982 and 1984.

Since November 1982, when plaintiff was hospitalized for inflammatory arthritis in both knees, plaintiff has been plagued with pain and stiffness in his joints, impeding his ability to lift heavy objects or to stand for prolonged periods. (R. 37–38). During his 1982 hospitalization, plaintiff complained of severe pain in his knees. He received acupuncture treatment to relieve pain due to tense effusion in his knees, and was diagnosed as suffering from inflammatory polyarthritis.

In March 1983, Dr. Birch examined plaintiff's knee problems and found that he experienced severe difficulty with squatting, hopping and rising from the sitting position, and mild difficulty with heel and toe walking. Plaintiff also experienced restrictive range of motion in both knees, and suffered from mild hyperthermia in both wrists. Dr. Birch found no evidence, however, of active inflammatory changes.

Plaintiff was again hospitalized in February 1984 for severe knee pain with swelling. Dr. Thompson, who treated plaintiff twice in January 1984 and once in February 1984, diagnosed rheumatoid arthritis. According to Dr. Thompson, plaintiff has been physically "disabled since January 1984, due to arthritic changes of the joints." (R. 198).

A Social Security consultative examination was performed by Dr. Jones in January 1988. Although Dr. Jones found no active inflammation, he concluded that plaintiff suffered from degenerative arthralgias and pain in both hands with synovial hypertrophy, and possessed poor grip

strength. Dr. Jones also observed that plaintiff experienced pain in his elbows, wrists, and cervical spine. Plaintiff, in addition, suffered from paranoia of being followed but displayed no evidence of delusion or hallucination. (R. 169).

In April 1988, Dr. Hackney performed a consultative psychological evaluation on plaintiff, and found that plaintiff was functioning at the mild retardation range of intelligence with a full scale IQ score of 70. Dr. Hackney, the Secretary's own consultative psychologist, believed that there was "no doubt that [plaintiff suffered from] some neurological problems ... along with severe psychological impairment." (R. 174). According to Dr. Hackney, plaintiff "would not be able to understand and perform simple tasks in an average amount of time," or to "sustain concentration over an eight hour day." (R. 175). Dr. Hackney attributed plaintiff's neurological problems to the severe trauma experienced by plaintiff at age twelve when he was hit by a car and remained unconscious for three months. Plaintiff's trauma-induced neurological problems, Dr. Hackney explained, were exacerbated by the onset of arthritis in the early 1980s:

> We see this frequently when someone will use all their energies to cope in an attempt to over come [sic] some sort of neurological problem. As they get older and the coping gets more difficult they tend to deteriorate. When something additional traumatic happens such as the onset of arthritis the deterioration can become much more rapid and a severe disability will result.

(R. 197).

Dr. Schell, who conducted neuropsychological testing on plaintiff in June 1989, concurred with Dr. Hackney's conclusions. Finding "severe deficits in every major area of the LNNB [Lauria–Nebraska Neuropsychological Battery]," Dr. Schell concluded that "[t]his is the worst case I have ever seen of an adult that was formerly able to work full time in competitive employment and was disabled by a gradual worsening of his condition by a secondary disease (such as arthritis)." (R. 210).

Dr. Schell even went so far as to state that Dr. Hackney's analysis did "not do full justice to Mr. Tucker's degree of decompensation." (R. 210). In Dr. Schell's opinion, plaintiff was "socially withdrawn, inappropriate in his everyday decisions, and ineffectual in work-like tasks," and "must have been barely functional during the entirety of his adult life." (R. 210). Dr. Schell applauded plaintiff's previous employment as a "testimony to his heroic efforts to overcome the effects of brain damage." (R. 211). In no uncertain terms, Dr. Schell concluded that "Mr. Tucker is now totally and permanently disabled due to an organic mental disorder." (R. 211).

With regard to the date of the onset of disability, Dr. Schell noted that plaintiff was totally disabled by November 1983, when he ceased working due to arthritis, and that plaintiff was "even more severely disabled by January 1984 when his problems with arthritis worsened." (R. 211). Dr. Hackney, on the other hand, pointed generally to the time of "the onset of arthritis" as the period in which the plaintiff became mentally disabled. (R. 197). Dr. Schell also believed that plaintiff encountered "great difficulty" in applying for disability benefits in 1984 because of his mental impairment, and that "making an appeal after he was denied would have most likely been impossible." (R. 211).

## III. DISCUSSION

Title II of the Social Security Act provides disability benefits for claimants who demonstrate that they suffer from a physical or mental disability that arose prior to the expiration of their insured status. 42 U.S.C. §§ 416(i), 423. To determine whether a claimant is disabled within the meaning of the Act, a five-step sequential evaluation is used. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). The claimant bears the burden of proof at the first four steps.

The first inquiry is whether the claimant is engaged in substantial gainful activity. If not, the second step requires the claimant to show that he has a medically severe impairment or combination of impairments.

*Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). At step three, the claimant must show that the impairment is "equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.* If no such equivalency exists, step four requires a showing that the impairment "prevents the claimant from performing work as he has performed in the past." *Id.* At the fifth step, the burden of proof shifts to the Secretary to show that the claimant has the residual functional capacity to "perform other work in the national economy in view of his age, education, and work experience." *Id.* at 143, 146 n. 5, 107 S.Ct. at 2292, 2294 n. 5; *Williams,* 844 F.2d at 751.

To make a claim for disability benefits, a claimant must first file a claim with the Social Security Administration ("SSA"). 20 C.F.R. §§ 404.900–404.906. If his claim for disability benefits is denied by the SSA at the initial determination, the claimant must apply for reconsideration within sixty days. *Id.* at § 404.909. Following an unsuccessful request for reconsideration, the claimant has sixty days to ask for an evidentiary hearing before an administrative law judge. *Id.* at § 404.933(b)(1). Should the ALJ render an unfavorable ruling, the claimant has to seek a discretionary appeal with the Appeals Council. 20 C.F.R. § 404.955. Finally, the claimant can challenge the Secretary's decision by bringing an action in district court pursuant to 42 U.S.C. § 405(g).

A. ADMINISTRATIVE RES JUDICATA

■ Under the above administrative scheme, an earlier determination at any stage in the administrative process may be final—and, thus, binding on subsequent claims—unless the claimant seeks timely review at the next stage. *See, e.g., McGowen v. Harris,* 666 F.2d 60, 65 (4th Cir.1981). If the claimant fails to proceed to the next administrative level, the Secretary may apply administrative res judicata to bar any subsequent applications based on the same claim. *Id.* Administrative res judicata may not be applied, however, when the claimant has stated a colorable consti-

tutional claim. *See Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Dozier v. Bowen,* 891 F.2d 769 (10th Cir.1989). Furthermore, the Secretary has discretion to reopen a claim that is properly barred by res judicata. *McGowen,* 666 F.2d at 65. Such a de facto reopening occurs when the Secretary reconsiders the merits of the claim "to any extent and at any administrative level." *Id.*

■ The district court lacks jurisdiction to review the Secretary's decision to deny a claim when the denial is properly based on administrative res judicata. *Teague v. Califano,* 560 F.2d 615, 618 (4th Cir.1977). Moreover, although the Secretary has discretion to reopen an otherwise barred claim, the Secretary's decision not to reopen such a claim is unreviewable. *Robertson v. Bowen,* 803 F.2d 808, 810 (5th Cir.1986). The district court has jurisdiction, however, to determine whether res judicata has properly been applied, or whether, though res judicata was properly applied, the claim has nevertheless been reopened. *Id.* 666 F.2d at 66. If the court determines that administrative res judicata was improperly applied or that the case has been reopened, the court may then address the merits of the claim. *Id.*

Plaintiff contends that the Secretary's application of res judicata was improper because he has stated a colorable constitutional claim. In plaintiff's view, applying res judicata to bar his claim would deprive him of due process of law because his mental impairment prevented him from complying with the administrative procedures. Alternatively, plaintiff argues that, irrespective of whether res judicata was proper in this instance, his claim has been reopened by the Secretary, thus affording judicial review of the merits.

In considering what constitutes a "colorable constitutional claim," courts have held that the constitutional issue must have "some merit," and not be "wholly insubstantial or frivolous." *Koerpel v. Heckler,* 797 F.2d 858, 863 (10th Cir.1986) (quoting *Boettcher v. Secretary of Health and Hu-*

*man Servs.,* 759 F.2d 719, 722 (9th Cir. 1985)). This rule has alternatively been stated as requiring a claim that does not "clearly appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction." *Id.* *Cf. Holloway v. Schweiker,* 724 F.2d 1102, 1105 (4th Cir.), *cert. denied,* 467 U.S. 1217, 104 S.Ct. 2664, 81 L.Ed.2d 369 (1984) (challenging proper application of a valid statute of limitations as a denial of due process is wholly insubstantial and frivolous and does not rise to the level of a colorable constitutional claim).

In *Elchediak v. Heckler,* a claimant for disability benefits alleged that his mental illness prevented him from proceeding in a timely fashion from one administrative level to the next. 750 F.2d 892 (11th Cir. 1985). The Eleventh Circuit Court held that the claimant's application was not barred by administrative res judicata, reasoning that "the very disability that forms all or part of the basis for which the claimant seeks benefits may deprive her of the ability to understand or act upon notice of available administrative procedures." *Id.* at 894 (quoting *Parker v. Califano,* 644 F.2d 1199, 1203 (6th Cir.1981)). The alleged due process deficiency, according to the court, "was not the content of the notices mailed and received, but rather, the claimant's ability to understand and act on that notice." *Id.* In concluding that the plaintiff had stated a colorable constitutional claim, the court found the following factors dispositive: (1) the claimant suffers from a medically-documented mental illness that forms the basis of his disability claim; (2) he was unrepresented by counsel on his prior application; and (3) he cannot assert a new claim for benefits because he now lacks insured status. *Id.* 750 F.2d at 895.

Many other jurisdictions, besides the Eleventh Circuit, have recognized that a claimant's substantiated allegation of a mental impairment that precludes him from pursuing his administrative remedies constitutes a colorable constitutional claim sufficient to invoke federal court jurisdiction. *See, e.g., Penner v. Schweiker,* 701 F.2d 256, 260–61 (3d Cir.1983); *Parker v. Califano,* 644 F.2d 1199, 1203 (6th Cir.1981); *Shrader v. Harris,* 631 F.2d 297, 301–02 (4th Cir.1980); *Brittingham v. Schweiker,* 558 F.Supp. 60, 61 (E.D.Penn.1983). Although the Tenth Circuit has never directly addressed this issue,[1] several lower courts in this jurisdiction—including this court— have likewise adopted the above rule. *See, e.g., Popp v. Secretary of Health and Human Servs.,* No. 85–6099, 1988 WL 147419 (D.Kan. filed Sept. 26, 1988); *Voth v. Bowen,* 702 F.Supp. 271 (D.Kan.1988).

■ In the present case, plaintiff presented his due process claim to the ALJ, alleging that his mental impairment precluded him from complying with the administrative procedures. (R. 201). Plaintiff has alleged that he suffers from a medically-documented mental disability, was unrepresented by counsel during his previous application, and cannot presently assert a new claim for benefits because his insured status has expired. Plaintiff, thus, has stated a colorable due process claim, and the application of administrative res judicata to his claim was improper.[2]

■ Ordinarily, after finding a colorable constitutional claim, courts would remand the case to the Secretary for a determination of whether the claimant possessed the requisite mental disability that prevented him from understanding and following the administrative procedures during his prior applications. *See, e.g., Elchediak,* 750 F.2d at 894. In this case, however, the ALJ has already made factual findings on plaintiff's claim of mental disability. Although the ALJ ruled only on the "unadjudicated period" between August 1 and December 31, 1984—and found that plaintiff was not disabled during this period—the ALJ appar-

---

1. The Tenth Circuit has ruled only that a claimant's unsupported allegation of mental impairment is insufficient to create a colorable constitutional claim. *Nelson v. Secretary of Health and Human Servs.,* 927 F.2d 1109, 1111 (10th Cir.1990).

2. Because the court finds that plaintiff has stated a colorable due process claim, thereby conferring federal court jurisdiction to review the case, the court need not address whether the claim had been reopened by the Secretary.

ently based his findings on evidence prior to this period. The ALJ specifically concluded that plaintiff was not disabled *"at any time on or before December 31, 1984."* (Emphasis added).

Because the ALJ's conclusions were not confined solely to the "unadjudicated period" between August 1 and December 31, 1984, it is pointless to remand for a determination on whether plaintiff was disabled at the time of his prior application: the ALJ has already answered in the negative. *Cf. Popp,* No. 85–6099, slip op. at 5 (court remanded case for further findings on claimant's mental impairment because "the ALJ did not make any findings on the matter"). Further, the record has been fully developed on the issue of whether the plaintiff suffered from mental disability. The court, therefore, will proceed directly to review the Secretary's findings both as to the "unadjudicated period" and the period of plaintiff's prior application.

## B. THE MERITS

 In reviewing the Secretary's decision to deny disability benefits, the court does not reweigh the evidence but merely examines whether the Secretary's findings are supported by substantial evidence. *Brown v. Bowen,* 801 F.2d 361, 362 (10th Cir.1986). "Substantial evidence" requires the quantum of evidence that a reasonable person would consider adequate to support a particular conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Although the court will not substitute its judgment for that of the Secretary, *Jordan v. Heckler,* 835 F.2d 1314, 1316 (10th Cir.1987), neither will the court accept mechanically and unquestioningly the Secretary's findings. *See Espinosa v. Secretary of Health and Human Servs.,* 565 F.Supp. 810, 812–13 (D.Kan.1983). Rather, the court scrutinizes the record in its entirety to assess the rationality of the Secretary's findings, and cannot rely merely on a few isolated facts in finding "substantial evidence" to support the Secretary's decision. *Cline v. Califano,* No. 78–4166 (D.Kan. August 31, 1979); *see also Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987).

## 1. Mental Disability

 In finding that plaintiff was not mentally disabled, the ALJ relied on the plaintiff's "treatment record from the early 1980s." (R. 16). The ALJ found no support for plaintiff's claims of depression and memory problems prior to December 31, 1984 because "he was not seeing a physician and was not undergoing treatment" for mental impairment at the time. (R. 16).

While it is true that plaintiff did not undergo medical treatment specifically for mental disability until his impairment was diagnosed by Dr. Hackney in 1988, the record does contain evidence of mental problems prior to Dr. Hackney's diagnosis. In 1984, plaintiff reported on a medical questionnaire that he could not remember who his previous physician was, indicating memory problems. (R. 130). In addition, the plaintiff testified to experiencing problems remembering business appointments before his tree trimming business shut down somewhere between 1982 and 1984, a further testament to the plaintiff's deficient memory. (R. 41). The ALJ, therefore, mischaracterized the evidence when he categorically concluded that "there is no evidence in the record that the claimant had mental problems until December 1987 when it was noted ... that he had problems remembering dates." (R. 16).

In further supporting his denial of the plaintiff's claim, the ALJ pointed to the plaintiff's "long history of successful work" and the fact that he "handled machinery and supervised people." (R. 16). The court finds that the ALJ has overstated the success of plaintiff's work history. For most of his adult life, plaintiff worked as a general laborer. Although he subsequently operated a tree-trimming business, the record does not indicate that plaintiff possessed any competent supervisory ability: he could not even get his employees to show up for work. (R. 30). Plaintiff's business operations were sporadic, and he was unable to depend on himself to keep business appointments, causing his business to become insolvent. Plaintiff has

had no taxable earnings since he left his job as a mill laborer in 1979 to start his tree trimming business. (R. 30). The court, thus, finds that the record, as a whole, does not support the ALJ's characterization of plaintiff's work history.

The ALJ also disputed the findings of Dr. Hackney and Dr. Schell that plaintiff's mental impairment was triggered by his head injury at age twelve and exacerbated by the onset of arthritis in the early 1980s. Relying instead on his own opinion, the ALJ ignored the physicians' conclusions, which stated unqualifiedly that plaintiff was disabled when his problems with arthritis emerged.

This court has held, in *Crozier v. Bowen*, No. 86–1553–T, slip op. at 6–7 (D.Kan. filed Oct. 1, 1987), that the ALJ may not substitute his judgment for that of medical doctors. *See also Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985). While the ALJ may choose between conflicting medical opinions or reject a medical opinion that is clearly contradicted by substantial medical evidence, he is "not free to set [his] own expertise against that of a physician who had personally examined the claimant." *Alvarez v. Califano*, 483 F.Supp. 1284, 1285 (E.D.Penn.1980) (quoting from *Gober v. Matthews*, 574 F.2d 772 (3d Cir.1978)); *see also Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978) (the expert opinions of a treating physician are binding on the fact finder unless contradicted by substantial evidence to the contrary).

There are no conflicting medical opinions in this case. The physicians who had examined plaintiff specifically for mental impairment both concluded that plaintiff's mental disability related back to the onset of his arthritis in the period between 1982 and 1984. Although the physicians who treated the plaintiff at that time had made no mention of any mental disease, it must be noted that these physicians examined plaintiff expressly for arthritic problems only. Their silence on the subject of plaintiff's mental impairment, thus, suggests only that the impairment was not detected at the time; it says very little about whether or not the impairment existed.

The ALJ's decision to disregard the physicians' conclusions was also not based on "reports, testimony or treatises by medical experts" or any substantial medical evidence. *Crozier*, No. 86–1553–T, slip. op. at 6. Lack of contemporaneous medical treatment, without more, does not amount to substantial medical evidence that can override the professional judgment of medical experts—particularly in mental disability cases since a person suffering from a mental infirmity may fail to recognize the need for treatment. Where, as here, all pertinent medical opinions support the claim of disability and are uncontradicted by substantial medical evidence, the Secretary's decision to deny disability cannot be affirmed. *See Celebrezze v. Warren*, 339 F.2d 833, 838 (10th Cir.1964); *Berven v. Gardner*, 414 F.2d 857, 860 (8th Cir.1969).

In *Jones v. Bowen*, by contrast, this court affirmed the Secretary's decision to reject the medical opinion of the claimant's treating physician. 696 F.Supp. 1415 (D.Kan.1988). The court held that the Secretary had "good cause" for rejecting the physician's conclusions, citing to the "brief and conclusory" nature of his opinion. *Id.* at 1418–19. *Cf. Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir.1987) (the Secretary's rejection of the treating physicians' testimony and reports "without good cause" was held erroneous). The physician's conclusions, it was noted, "contain mainly a recitation of plaintiff's history and complaints and descriptions of medications, and lack any meaningful examination findings." *Id.* 696 F.Supp. at 1418. The physician failed to discuss the results of any tests that might have been administered; nor does the record reflect whether complete medical examinations were conducted. Furthermore, the physician's conclusions were not corroborated by other treating physicians who examined the claimant for the same ailment. *Id.* In light of the above factors, the Secretary did not err by disregarding the physician's opinion.

The instant case, however, presents a visibly different set of facts. The conclusions of Dr. Hackney and Dr. Schell are not

mere conclusory recitations of the plaintiff's complaints. Those conclusions exhibit careful, thorough analyses substantiated by medical testing and examination. Moreover, although the conclusions of Dr. Hackney and Dr. Schell were not corroborated by physicians who treated the plaintiff during the alleged onset of his disability, those physicians did not treat him for mental disease. This lack of corroboration is, thus, not sufficiently probative of the question whether plaintiff's mental impairment actually existed in the period between 1982 and 1984. *See, e.g., Taylor v. Bowen,* 738 F.Supp. 436, 440 (D.Kan.1987) (absence of psychiatric hospitalization or treatment is insignificant because plaintiff was then unaware of the cause of her problems). Under the present facts, then, the Secretary does not have good cause to discard the expert opinions.

In light of the substantial evidence in the record attesting to the disabling effects of the plaintiff's mental impairment and the scarcity of evidence supporting the Secretary's conclusions, the court finds that the plaintiff was mentally disabled at the time of the onset of his arthritis. Plaintiff has satisfied the five-step evaluation process: The record shows that the plaintiff was not engaged in substantial gainful activity at that time; that he suffered from a medically severe impairment; and that he was unable to perform work that he had performed in the past. The Secretary, on the other hand, has failed to sustain his burden of showing that the plaintiff possessed the residual functional capacity to perform other work in the national economy. The Secretary's finding of no disability is, therefore, reversed.

■ Although the record provides ample support for Dr. Schell's conclusion that the plaintiff was definitely mentally disabled as of January 1984, the court believes that the case should be remanded to determine whether an earlier onset date is appropriate. This is necessary particularly since there are several possible onset dates: the plaintiff alleges an onset date of November 1982; Dr. Schell indicated November 1983 as the start of the plaintiff's prob-

lems; while Dr. Hackney referred generally to "the onset of arthritis," which became prominent sometime between 1982 and 1984. The court, thus, remands the case for a determination of when, between November 1982 and January 1984, the plaintiff's arthritis became sufficiently prominent to trigger his mental disability.

*2. Physical Disability*

■ In finding the plaintiff not physically disabled, the ALJ's analysis does not suffer from the same infirmity as outlined above. The ALJ cited to the lack of medical treatment to support the denial of benefits. The plaintiff, observed the Secretary, did not have regular contact with a doctor in 1984. Nor was he using an assistive device at that time. Such observations led the ALJ to conclude that plaintiff's "complaints of totally disabling pain prior to December 1984 are not consistent with this lack of medical treatment." (R. 16).

The ALJ's findings stand in direct conflict with the professional judgment of a treating physician. The ALJ expressly ignored Dr. Thompson's opinion that plaintiff was physically disabled as of January 1984 despite the fact that Dr. Thompson was the treating physician at that time.

Unlike the conclusions of Drs. Hackney and Schell, however, Dr. Thompson's conclusions were brief, conclusory and unsubstantiated. The record does not reflect whether he performed any extensive examination or testing on the plaintiff. In addition, his conclusions were made five years after he treated the plaintiff.

More significantly, there appears to be contradictory medical opinions regarding plaintiff's physical disability. In 1988, Dr. Jones examined plaintiff specifically for arthritic problems, and found no active inflammation despite plaintiff's pain and restricted range of motion. Dr. Jones' examination, which focused on plaintiff's arthritic impairment, did not lead him to conclude that plaintiff was disabled due to arthritis.

As indicated in the preceding section, the Secretary may not disregard a medical opinion unless there is good cause for doing so. The record suggests that the

**1300**

ALJ's rejection of Dr. Thompson's opinion was not based on the lack of medical treatment alone but was also bolstered by Dr. Jones' seemingly conflicting opinion. Because of the conclusoriness and scantiness of Dr. Thompson's findings and the apparent conflict in medical opinions, this court finds that the Secretary had good cause for disregarding the professional judgment of a medical expert.

In his brief, the Secretary interpreted Dr. Thompson's findings as an attempt to "lean over backwards" to help his patients receive disability benefits. This court, however, is disinclined to take such a skeptical view of the integrity and sincerity of medical professionals. *See Frey,* 816 F.2d at 515 (ALJ's assertion that a family doctor "naturally advocates his patient's cause" does not constitute good cause to reject the doctor's opinion). If the court were to sit as a finder of fact, the court would have given more deference and credence to Dr. Thompson than that accorded by the ALJ. Nonetheless, the Secretary's decision cannot be said to lack substantial evidence. Accordingly, the court affirms the Secretary's finding that plaintiff was not physically disabled.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for summary judgment (Doc. 13) and defendant's motion for affirmance (Doc. 14) are hereby granted in part and denied in part.

IT IS FURTHER ORDERED that this action is hereby remanded to the Secretary for a determination of the onset date of plaintiff's mental disability. The Secretary is further ordered to award benefits for the plaintiff's mental disability in accordance with the onset date.