**Charlie GREEN, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

No. 82–6014.

United States District Court, D. Kansas.

March 20, 1984.

David H.M. Gray, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., Paul P. Cacioppo, Regional Atty., Region VII, Dept. of Health & Human Services, D. Samuel Borin, Asst. Regional Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This is an action under 42 U.S.C. § 405(g) for judicial review of the Secretary of Health and Human Services' decision to terminate plaintiff's social security benefits under the Social Security Act. The plaintiff moves this Court to remand the case to the Secretary on the grounds that the plaintiff was not represented by an attorney and the medical evidence presented at the hearing before the Administrative Law Judge (ALJ) did not fully document plaintiff's physical condition with respect to his ability to perform sedentary work. The defendant filed a counter-motion for affirmance.

The plaintiff apparently moves for remand rather than reversal of the Secretary's decision because evidence that the plaintiff suffered a heart attack in December 1982, i.e., seven months after the May 1982 hearing before the ALJ, is properly considered in a motion for remand, but cannot be considered in a motion for summary judgment. Even in the absence of evidence of plaintiff's subsequent heart attack, however, this Court finds that the decision is not supported by substantial evidence, and the Secretary's decision that the plaintiff is able to perform substantial gainful work is therefore reversed.

On September 8, 1976, the Social Security Administration (SSA) initially determined that Charlie Green was disabled as of April 15, 1975, due to atherosclerotic heart disease, acute myocardial infarction,

post-myocardial infarction syndrome, and hypertensive disease. (R. 47). On July 2, 1981, the Disability Determination Services notified Mr. Green that they were about to recommend to the SSA that Mr. Green had ceased his disability as of August 17, 1978. (R. 50). On August 31, 1981, the SSA determined Mr. Green had ceased his disability as of August 17, 1978. (R. 48). Pursuant to Mr. Green's request for reconsideration (R. 52), the SSA on January 28, 1982, reconsidered its determination and again found that Mr. Green ceased his disability on August 17, 1978. (R. 53). On February 8, 1982, Mr. Green timely requested a hearing. (R. 57). On May 11, 1982, a hearing was held before the ALJ.

The ALJ found that Mr. Green regained his ability to perform substantial gainful work as of August 1978. Nevertheless, the ALJ found that Mr. Green was entitled to disability payments through September 1981 because it was not until July 1981 that the SSA notified Green that they determined he was no longer disabled as of August 1978.

The ALJ recites that the evidentiary bases of his decision were the records of Mr. Green's numerous hospitalizations, Dr. Duick's August 1978 consultation, Dr. Hetrick's October 1978 psychological evaluation, and Dr. Brown's April 29, 1982 letter. (R. 10–12). The ALJ concluded from these objective facts that Mr. Green had recovered his ability to perform at least sedentary work.

The ALJ's findings agreed with the SSA's determinations in August 1981 and January 1982 that Mr. Green ceased his disability as of August 17, 1978. The 1981 SSA determination was based largely on the reports of Dr. Duick (Ex. 23) and Dr. Henderson (Ex. 27). (R. 49). The SSA's 1982 determination was based on Exhibit Nos. 20, 22, 23, 24, 25, 26, 27 and 28. (R. 54). The SSA Examiners obviously focused on Dr. Duick's August 17, 1978 evaluation of Mr. Green's ability to work because both Examiners found he had ceased his disability as of the date of the report. It is important to note that the Examiners did not consider other evidence that was available and highly relevant to Mr. Green's ability to work as of the date of their respective determinations. The Examiner in 1982 did not consider the January 22, 1979 vocational evaluation report of Jean Chappell, a vocational counselor of the Kansas Department of Social and Rehabilitation Services, which concluded that it was not feasible for Mr. Green to be employed. Moreover, of a total of eight times that Mr. Green was admitted to the hospital between August 17, 1978 (the date as of which the Examiner found claimant to be able to work) and January 29, 1982 (the date on which the Examiner made his finding) the Examiner failed to consider six of the eight periods of hospitalization, to wit: November 15 to November 21, 1979 (R. 204–205); June 7 to June 12, 1980 (R. 206–209); November 17 to November 21, 1980 (R. 212–217); January 6, 1981 (R. 218–220); and September 17 to September 19, 1981 (R. 221–224). The timing of events in this case suggests to this Court that the present Social Security Administration undertook the re-evaluation of outstanding disability cases, and sometime around July 1981 seized onto the August 1978 evaluation and used it as the basis for terminating this claimant's benefits.

The ALJ, like the SSA Examiners, apparently relied heavily upon the August 17, 1978 report of Dr. Duick (Ex. 23), because it was as of August 1978 that the ALJ determined Mr. Green was able to work. (R. 12). Dr. Duick concluded that Mr. Green "would be able to 'handle' some type of sedentary, non-stressful employment." (R. 145). This is the only expert opinion in the entire record that definitively states that Mr. Green is able to work. The ALJ erroneously referred to Dr. Duick as "claimant's physician." (R. 12). From the record, it appears that Dr. Duick saw Mr. Green on only this one occasion and this was at the request of the Kansas Department of Social and Rehabilitation Services. The ALJ must consider this opinion along with all the evidence in the record and cannot single out this one expert opinion to support his finding if there is substantial

**788**

evidence that leads to a different conclusion.

There is considerable evidence in the record in addition to Dr. Duick's report which must be given fair and just consideration in order to make an accurate finding concerning Mr. Green's ability to work. First, there are eight episodes of hospitalization that occurred from the date of Dr. Duick's report up to the time of the ALJ hearing. The frequency and gravity of these hospitalizations suggest that Dr. Duick's conclusion may be contradicted or superseded by the subsequent changes in Mr. Green's health. Also subsequent to Dr. Duick's report are the expert opinions of Ms. Chappell, dated January 22, 1979 (Ex. 13); Dr. Henderson, dated June 19, 1981 (Ex. 27); Dr. Brown, dated October 20, 1981 (Ex. 28) and April 29, 1982 (Ex. 33); and Dr. Wood, dated November 10, 1981 (R. 164).

Mr. Green was first disabled in 1974 when he suffered a stroke (R. 110), and today he continues to suffer from residual memory loss and left side weakness resulting from that stroke. (R. 36). In 1976 he was diagnosed as having suffered his first "heart attack," a myocardial infarction. (R. 120). Between August 1978 (the date as of which the ALJ found claimant to be able to work) and May 11, 1981 (the date on which the ALJ made his finding), Mr. Green was hospitalized or seen in the emergency room eight times with symptoms related to his coronary artery disease. He has been diagnosed as suffering from hypertensive cardiovascular disease (R. 139, 162, 213); coronary artery disease (R. 139, 172, 205, 207); arteriosclerotic heart disease (R. 162, 213); and cardiac arrythmia (R. 172, 205, 207, 222). On at least three occasions, he was diagnosed as having suffered congestive heart failure (R. 207, 213, 222). He is on daily medication for his heart disease.

The ALJ fairly accurately recounts the objective facts of Mr. Green's symptoms upon admittance to the hospital, his treatment, the diagnosis, and his physical state upon dismissal. In addition to the facts in the ALJ's opinion, Mr. Green was presented at the St. Francis emergency room on August 12, 1980 and January 6, 1981. The ALJ concluded that Mr. Green's periods of hospitalization were on an "infrequent basis," that he "responded to treatment," and generally that he was dismissed in an improved state.

Of the medical reports in the record, only the evaluations of Dr. Brown, Dr. Duick, and Ms. Chappell present an opinion as to Mr. Green's ability to work. Dr. Henderson's evaluation did not posit an opinion as to whether Mr. Green was able to work, but confirmed the diagnoses of previous cerebrovascular accident, hypertension, and congestive heart failure (R. 179–181). Dr. Wood also failed to make an evaluation of Mr. Green's ability to work, and he too confirmed previous diagnoses of arteriosclerotic heart disease, old inferior wall myocardial infarction, and multiple arrhythmias. (R. 164).

Dr. V.J. Brown has been Mr. Green's physician for 27 years, and he is intimately aware of Mr. Green's medical condition. Dr. Brown wrote to the SSA on October 20, 1981. He confirmed that Mr. Green had cardiac disease and myocardiopathy associated with intermittent episodes of auricular fibrillation. Dr. Brown confirmed that Mr. Green had congestive heart failure on two occasions in the previous year. He stated that Mr. Green was "ambulatory and is able to perform self-care and minor things that do not require strenuous exertion." (R. 183). Dr. Brown wrote again on April 29, 1982. He reported that Mr. Green again suffered congestive heart failure in February 1982. Dr. Brown stated, "He continues to have shortness of breath on moderate exertion and occasionally [sic] episodes of angina requiring nitroglycerin. Although he is ambulatory, he has not been able to assume any type of full-time employment." (R. 198). The Court believes this April 1982 letter to be more probative and worthy of greater weight than Dr. Duick's report with respect to Mr. Green's physical condition as of May 11, 1982, because it is closer in time to the actual

determination of his ability, because it is an evaluation by Mr. Green's long-time physician, and because this letter takes his more recent hospitalizations and medical developments into account.

The ALJ relied on the expert opinion of Dr. Hetrick, a psychologist, but failed to consider the subsequent vocational rehabilitation report of Ms. Chappell. The Division of Rehabilitation Services referred Mr. Green to Dr. Hetrick for an evaluation of the emotional factors that might exacerbate his physical symptoms and prevent him from employment. Dr. Hetrick found that Mr. Green was cooperative, idealized self-sufficiency, and was competitive. Dr. Hetrick found that he was highly anxious, that he suppressed his emotions, and that he converted emotional threat into physical symptoms. In his final diagnosis, Dr. Hetrick concluded:

> Anxiety currently predominates probably because his physical symptoms clash with his basic life orientation. That orientation is self-sufficiency with autonomy. He has poor skills in coping with emotion which prompt an amplification of physical concerns since the suppression and insulation does not always work. Work rehabilitation is recommended.

(R. 160–161).

It is important to note that Dr. Hetrick did not ultimately conclude that Mr. Green was physically and psychologically able to work, but instead he recommended *"work rehabilitation."* Apparently in response to Dr. Hetrick's recommendation for rehabilitation, Jean Chappell of the Kansas Division of Vocational Rehabilitation evaluated Mr. Green and made a report dated January 22, 1979. (Ex. 13). The report concluded that Mr. Green was genuinely concerned that he would die if he returned to work (R. 80–81), and that his failure to return to work was "more a function of his fear [of further heart complications] than of his desire to remain on disability." (R. 81). The report stated that "Mr. Green will present to a prospective employer as so severely disabled as to preclude any possi-

bility of that person's hiring him," and "[I]t doesn't appear that he would be feasible at this time for competitive employment." (R. 79). The report finally concluded that rehabilitation services would not benefit Mr. Green and that he was not able to undertake employment at that time.

Mr. Green testified before the ALJ on May 11, 1982. He testified that he has chest pains two to three times per week, that he daily takes nitroglycerin and other medications since his heart attack in 1976, that he suffers from shortness of breath and it comes on without any exertion, that he has blackouts twice a month, that since 1974 he breaks out into a sweat one or two times per month, and that he has a lack of memory and weakness of his left side. He testified that he can wash the dishes around the house, but that he does not go on walks. He testified he used to mow the lawn, but that he has not been able to do so since 1980. He could go fishing in 1980, but he now gets sick if he goes out.

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is such evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In *Arie v. Heckler,* No. 82–1608 (D.Kan. July 15, 1983), the Court stated:

> While it is not the duty of the Court to reweigh the evidence, the Court may not mechanically accept the findings of the Secretary, but must scrutinize the entire record to determine whether the conclusions reached are rational. *Martin v. Schweiker,* No. 80–1423 (D.Kan. filed January 7, 1982). The Court cannot affirm the Secretary's decision by isolating a few facts and calling them "substantial evidence." *Cline v. Califano,* No. 78 4166 (D.Kan. August 31, 1979). In applying these standards, the Court must keep in mind that the purpose of the Social Security Act is to ameliorate some

of the rigors of life for those who are disabled. *Dvorak v. Celebrezze*, 345 F.2d 894 (10th Cir.1965).

This Court finds that the ALJ's decision that Mr. Green was physically able to assume substantial gainful work as of August 1978 is wholly incredible and that the conclusion is not supported by substantial evidence. The ALJ relied predominantly upon the expert opinion of Dr. Duick. This opinion is refuted by the subsequent evaluations of the vocational rehabilitation counselor and by Dr. V.J. Brown, Mr. Green's physician of 27 years. The ALJ absolutely failed to give sufficient credence to Mr. Green's diagnosis and symptoms and to the eight episodes of hospitalization that transpired subsequent to Dr. Duick's examination. The Court finds it inconceivable that the ALJ would conclude that the eight periods of hospitalization were "infrequent" and that the patient's dismissal in an "improved state" from the hospital was equivalent to the recovery of health. There is no way this man should be required to engage in any form of physical activity or exposure to the elements. He is a walking heart attack case! These findings are not based upon the fact that Mr. Green suffered a heart attack subsequent to the ALJ hearing; evidence of the December 1982 heart attack merely corroborates the vast weight of the evidence in the record that was before the ALJ. The evidence in this record must lead to the conclusion that Mr. Green is unable to perform substantial gainful work. The ALJ's decision simply is not supported by substantial evidence.

IT IS THEREFORE ORDERED that the Secretary's decision be reversed. The defendant's motion is overruled. This case is remanded with instructions to award plaintiff disability insurance benefits continuing from September 1981.