**Louis A. CLAASSEN, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services of the United States, Defendant.**

Civ. No. 84–1049–K.

United States District Court,
D. Kansas.

Jan. 22, 1985.

David H.M. Gray, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is an action under 42 U.S.C. § 405(g) for judicial review of the Secretary of Health and Human Services' decision to terminate Plaintiff's Social Security benefits under the Social Security Act. Plaintiff moved for summary judgment and, in the alternative, for remand to the Secretary on the basis of new evidence. The Secretary moved for an order affirming the decision of the Secretary. Subsequently, the Secretary moved for remand.

Plaintiff, who is now 60, was found to be disabled in May, 1976 because of "a serious heart condition." (R. 14) He was under the care of cardiologist William L. Hayes, M.D., who treated him for arteriosclerotic heart disease and two acute myocardial infarctions. The most recent was on May 10, 1976. Dr. Hayes reported in a June 7, 1976 letter: "I have advised him to retire for medical reasons, and I regard him as being totally disabled." (R. 106; see generally R. 96–98, 102–115) This second heart attack was preceded less than a year before by a normal nine minute treadmill test. (R. 108) Plaintiff recovered from this heart attack, but

> ... since that time has suffered substernal pain and pressure accompanied by a heavy feeling in both arms. His symptoms are generally brought on by anxiety and mental stress and the patient believes that it would be brought on by physical exertion except that he has avoided such activity. The pain is immediately relieved by one nitroglycerin sublingually in approximately 30 seconds to one minute.

(R. 109) A catheterization revealed "severe three vessel coronary disease. Poor left ventricular function. Diskenetic apical segment of the left ventricle." (R. 114) When four aortocoronary bypass shunt

surgery (R. 139) was performed on August 1, 1976, a ventricular aneurysm was found, and a portion of his myocardium was resected. (R. 123)

During his first heart attack, Plaintiff also suffered a cerebral embolus, which was soon resolved. (R. 108)

When Plaintiff's disabled status was questioned by the administration, Dr. Hayes, who has been Plaintiff's cardiologist since 1972 (R. 31) reported on August 16, 1982:

> I am including a copy of my office records for the past year concerning Louis Claassen. He continues under my care for arteriosclerotic heart disease with a previous myocardial infarction and aortocoronary bypass surgery done on August 1, 1976. His present medications include Lanoxin 0.25 milligrams daily and Nitroglycerin as needed. This program produces satisfactory control of symptoms on very light activity. I continue to regard him as completely disabled for any kind of work.

(R. 116)

Richard Spann, M.D. was particularly outspoken concerning Plaintiff's disability and the Secretary's denial of benefits, in his November 3, 1982 letter:

> I sincerely regret this hastily formed, ill conceived, and prejudicially derived decision. This man has been disabled since multiple myocardial infarctions and cardiac surgery and has continued to be so. Under no circumstances is he to return to occupation approaching that of what he had before. At the time of his surgery, ventricular aneurysm was found, a portion of his myocardium was then resected, and although he has fortunately been free of angina, his cardiac disease has in no way been reversed. He still has severe limitations, and I think the decision that you have rendered is totally false on his behalf.

(R. 123)

The angina which had abated when Dr. Spann wrote his letter had returned by the time Dr. Hayes wrote his second letter on October 7, 1983. Dr. Hayes reported:

> As I have written in previous letters and reports, Mr. Claassen has been under my care for several years. He has been disabled by arteriosclerotic heart disease for most of this time. He has had acute myocardial infarctions in May of 1972 and May of 1976. He had four aortocoronary bypass shunts done in August of 1976. He remains, however, completely disabled for work by angina pectoris. His symptoms are controlled only be [sic] severe restriction of his activity which precludes any kind of gainful employment or any kind of physical or emotional stress. I want to emphasize that this disability is complete and permanent.

(R. 139) Plaintiff sees Dr. Hayes every three to four months. (R. 31)

On the basis of a seven and one-half minute treadmill test, the Secretary's consultative physician concluded that Plaintiff had normal cardiopulmonary function. (R. 118)

This court has previously described the scope of review in *Green v. Schweiker*, 582 F.Supp. 786 (1984) at 789–790:

> The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that 'the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.' Substantial evidence is such evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In *Arie v. Heckler*, No. 82–1608 (D.Kan. July 15, 1983), the Court stated:

> While it is not the duty of the Court to reweigh the evidence, the Court may not mechanically accept the findings of the Secretary, but must scrutinize the entire record to determine whether the conclusions reached are rational. *Martin v. Schweiker* [562 F.Supp. 912], No. 80–1423 (D.Kan. filed January 7, 1982). The Court cannot affirm the Secretary's decision by isolating a few facts and calling them "substantial evidence." *Cline v. Califano*, No. 78–4166 (D.Kan. August 31, 1979). In applying these standards,

the Court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled. *Dvorak v. Celebreeze [Celebrezze]*, 345 F.2d 894 (10th Cir.1965).

Plaintiff, who was represented by an attorney at the initial administrative hearing, has submitted additional evidence that has not been previously submitted to the Secretary. This evidence consists of an additional letter from Dr. Haynes detailing a subsequent episode of congestive heart failure, a letter from Irvin R. Penner, a social worker who knows Plaintiff as a friend, and a neuropsychological evaluation. This additional evidence is offered in support of Plaintiff's motion for remand. Such evidence may only be considered if there is good cause for the failure to submit the evidence to the agency. This court concurs with a previous ruling of this court, which stated:

> This Court has no difficulty concluding that good cause has been shown which warrants remand of this action for a further hearing. This Court fully realizes that remand is proper where the proffered new evidence is deemed to constitute new and additional information for the record, *Lucas v. Finch*, 322 F.Supp. 1209 (S.D.W.Va.1970), where the new evidence is necessary to develop the required facts to determine the claim, *Hupp v. Celebrezze*, 220 F.Supp. 463 (N.D.Iowa 1962), and where the new evidence is required to be made a part of the record in order to afford the plaintiff a full and fair hearing. *Hutchinson v. Weinberger*, 399 F.Supp. 426 (E.D.Mich. 1975).

*Hayes v. Califano*, D.Kan. unpub. No. 77–1082 at page 7.

Dr. Hayes' letter reports developments in Plaintiff's heart condition that had not occurred until after the opportunity had passed to inform the Secretary of them. Irvin Penner's letter likewise describes subsequent events which confirm the seriousness of Plaintiff's heart disease and reinforces Plaintiff's credibility. The neuropsychological report, which was performed by Leslie Ruthven, a clinical psychologist, discloses a chronic brain syndrome with associated reduction of adaptive capacity. Dr. Ruthven concluded that, because of this impairment, Plaintiff ... cannot cope with or master the demands of gainful employment to any meaningful or productive degree. He has difficulty handling even a very low demand environment without experiencing distress.

This impairment has apparently existed for a substantial period of time. However, it was not known to Plaintiff or his attorney until after they obtained the results of Dr. Ruthven's evaluation after all administrative appeals had been exhausted and after this action had been filed.

The process of discovering a condition such as chronic brain syndrome is haphazard at best. A condition that might be obvious to a trained clinical psychologist after administering a lengthy battery of tests may not be at all obvious to the person afflicted. Neither would such a condition necessarily be obvious to an attorney representing him. Neither Plaintiff nor his attorney can be faulted for not obtaining such an evaluation by any particular date. This new evidence would certainly be necessary "in order to afford the plaintiff a full and fair hearing." *Hayes v. Califano*, supra.

Because of this court's ruling, however, it is not necessary to remand this case. The new evidence, though justifying a remand of this case, is not considered and is not a basis for the following ruling.

It is well accepted that substantial gainful activity means performance of a substantial service with a reasonable regularity. *Broadbent v. Harris*, 698 F.2d 407 (10th Cir.1983). See also *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir.1973), where it was held that the ability to work only a few hours per day or the ability to work intermittently is not the ability to engage in substantial gainful activity. The court in *Broadbent* found that activities, which exceeded the activities plaintiff is able to perform, did not form a basis for concluding that the claimant could perform

substantial gainful activity. The Secretary has ignored the evidence as a whole and instead has selectively abstracted pieces of evidence favorable to her position. This practice was rejected in *Green v. Schweiker*, 582 F.Supp. 786 (D.Kan.1984) and *Alvarez v. Califano*, 483 F.Supp. 1284 (E.D. Penn.1980). See also 4 R.I.A. *Social Security Coordinator* § 30, 457. Yet the ALJ in his decision, and the Secretary in argument to this court, cite isolated activities, such as occasionally using a riding lawnmower for 45 minutes, while ignoring the fact that Plaintiff must rest after such activity. (See R. 32–33) In fact the few activities relied upon by the Secretary are the exception to Plaintiff's main activity of resting. (R. 33) Even playing five holes of golf requires one to two days to recover. (R. 34) The longest sustained light activity, such as riding a lawnmower, Plaintiff can tolerate is 40–45 minutes, which must be followed by rest. (R. 35–36)

■ A fair reading of Plaintiff's testimony would compel the conclusion that Plaintiff's heart disease has left him with no residual functional capacity to work. Such subjective evidence of the effect of the impairment on the individual claimant must be considered. *Ber v. Celebrezze*, 332 F.2d 293 (2d Cir.1964); *Allen v. Weinberger*, 552 F.2d 781 (7th Cir.1977); *Ragsdale v. Secretary, Dept. of Health, Education & Welfare*, 623 F.2d 528 (8th Cir.1980); and *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983). See also CCH *Unemployment Ins. Rep.* § 15119.

■ The courts have always given great weight to the ALJ's findings where credibility of witnesses is concerned. Where the ALJ does not fully believe Plaintiff's subjective testimony, however, he is required to make specific findings and state his reasons for disbelieving evidence or testimony supporting his belief. *Marcus v. Califano*, 615 F.2d 23 (2d Cir.1979); *Scharlow v. Schweiker*, 655 F.2d 645 (5th Cir.1981); *Beavers v. Secretary of Health, Ed. & Welfare*, 577 F.2d 383 (6th Cir.1978); *Broadbent v. Harris*, supra; and *Little v. Schweiker*, 555 F.Supp. 541 (N.D.Tex.1982). The ALJ in this case made no findings of

credibility adverse to Plaintiff. Accordingly, his testimony must be taken as true.

The ALJ also selectively abstracted statements of Plaintiff's physicians to justify his adverse ruling. For example, the ALJ noted that Plaintiff's condition "appears reasonably stable" and that the "medical regimen that he was on satisfactorily controlled his symptoms." (R. 15–16) A condition medically described as "stable" is not the equivalent of being able to work, and control of symptoms does not mean the underlying heart disease is no longer a constant threat to Plaintiff's life and a continuing impediment to work. These observations also ignore the fact that Plaintiff has achieved this status partly by severely restricting his activities. (R. 116) Another example of the Secretary's selective abstraction of statements is the analysis at page 4 of the Secretary's brief in which the Secretary's attorney quotes Dr. Spann as saying Plaintiff is not "to return to an occupation approaching that of what he had before." (R. 123) First, the Secretary's attorney incorrectly attributes this statement to Dr. Hayes. Next the Secretary's attorney distorts its import. An important legal issue in the disability determination is whether the claimant can return to his previous occupation. A statement that Plaintiff can not do one thing does not imply that he can do other things. Finally, the overall import of Dr. Spann's letter is that Plaintiff remains just as disabled as his second heart attack previously left him.

The only medical evidence which even appears to support the ALJ's ruling is the seven and one-half minute treadmill test done by the Secretary's consultative physician, Dr. Sifford, who has seen Plaintiff this one time only. Plaintiff correctly argues that:

> The treadmill exercise electrocardiogram is the most sensitive noninvasive test commonly available for the evaluation of coronary artery disease. This test is negative in 35 percent of patients with very real coronary artery disease causing severe disabling angina pectoris.

1 *Social Security Practice Guide* § 9.02[4][a] (Matthew Bender 1984), citing

*The Merck Manual of Diagnosis and Therapy,* § 1407 (Berkow 13th Ed. 1977) Likewise, it has been said by a Social Security consultative physician:

> Exercise tests to diagnose heart disease aren't perfect; they may look positive for abnormalities that aren't really present, and they may look negative for abnormalities of the heart which really are present.

David A. Morton III, M.D., *Medical Proof of Social Security Disability,* (West 1983) at 108.

The Tenth Circuit follows the rule recognized in other circuits that the opinion of treating physicians deserve more weight than the opinion of consultative physicians. The court quoted from another jurisdiction in *Broadbent v. Harris,* supra, at 414:

> [B]ecause of the helter-skelter nature of the records in these cases, ... [courts must] not adopt the facile way of disposing of an injured applicant's case by reference to, and reliance upon, the statements of one or two physicians, as against the considered statements of many physicians and surgeons who have had more opportunity of examining and treating the applicant, more occasions of making medical reports upon him, and more expertness in diagnosis ....
> *Davidson v. Gardner,* 370 F.2d 803, 823 (6th Cir., 1966).

This Court has also ruled that:

> Of course, reports of government consultative physicians who examined plaintiff only once, are accorded little weight, especially when they are inconsistent with reports of treating physicians. *Broadbent v. Harris,* supra; *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982).

*Espinosa v. Secretary of Health & Human Serv.,* 565 F.Supp. 810 (D.Kan.1983) at 813.

The agency in this case has apparently departed from its previous well advised policy:

> S.S. Disability considers the claimant's treating doctor to know more about his chest pain than anyone else, since that doctor usually knows the claimant better.

David A. Morton III, M.D., *Medical Proof of Social Security Disability,* (West 1983) at 105.

Expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary. *Broadbent v. Harris,* supra; *Bastien v. Califano,* 572 F.2d 908 (2d Cir.1978); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38 (2d Cir.1972); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63 (2d Cir.1980); *Branham v. Gardner,* 383 F.2d 614 (6th Cir. 1967); *Aubeuf v. Schweiker,* 649 F.2d 107 (2d Cir.1981); and *Hankerson v. Harris,* 636 F.2d 893 (2d Cir.1980). It cannot be said that one negative treadmill test by a consultative physician who has seen Plaintiff only that one time constitutes substantial evidence. Even if such tests were more definitive, the overwhelming medical evidence is to the contrary. This negative treadmill test is particularly nondiagnostic in this case because the history shows a previous negative treadmill test less than one year before Plaintiff's most serious heart attack. (R. 108) It is also significant that the consultative physician elected not to push Plaintiff beyond the normal results obtained partly because of his "extensive prior difficulties." (R. 118)

In view of the foregoing evidence, the ALJ's ruling must be characterized as a hastily formed, ill conceived, and prejudicially drawn decision. The only way this decision could be supported would be to start from the premise that the agency is bent upon defeating the Plaintiff's disability claim rather than making an impartial inquiry. Far from the liberal construction of the statute and regulations that is required, the ALJ either wholly ignored the reports or the physicians or was so inept that he failed to appreciate what the physicians reported. It is an understatement to say that there is no substantial basis for the Secretary's decision.

The Secretary's motion for remand requires only brief comment. The Secretary has moved to remand on the authority

of Section 2(a), (b), and (c) of the Social Security Disability Benefits Reform Act because of the new standard for determining continuing disability in cases involving medical improvement. This new law sets forth a standard that is more beneficial to the Plaintiff than the previous standard applied by the Secretary despite its universal rejection by the courts. This Court has ruled that Plaintiff is entitled to benefits under the law as it existed prior to the passage of the Reform Act, which in effect requires the Secretary to follow the law that had already been established in the federal courts. No useful purpose could be served by remanding for the Secretary to consider Plaintiff's claim again under a more liberal standard. Plaintiff has been without benefits since December, 1982. This Court will not impose upon Plaintiff the further delay that a remand would cause in view of Plaintiff's obvious disability and, entitlement to benefits.

IT IS THEREFORE ORDERED that the Secretary's decision be reversed. The Plaintiff's motion for summary judgment is granted and the Secretary's motions for an order affirming the Secretary's decision and to remand are denied. This case is remanded with instructions to award Plaintiff disability insurance benefits including all past benefits that should have been paid since his improper termination.