**Scott STEFANOPOULOS, Plaintiff,**

v.

**Jo Anne B. BARNHART,[1] Commissioner of Social Security, Defendant.**

**No. 01–4068–DES.**

United States District Court, D. Kansas.

Jan. 25, 2002.

---

**1.** On November 9, 2001, Jo Anne B. Barnhart was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Barnhart is substituted for her predecessor, Acting Commissioner, Larry G. Massanari.

Steven M. Tilton, Tilton & Tilton LLP, Topeka, KS, for plaintiff.

D. Brad Bailey, Office of the United States Attorney, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's Complaint (Doc. 1), filed June 11, 2001, appealing the Social Security Commissioner's denial of his application for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* For the following reasons, defendant's decision is reversed and the case is remanded for further proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on August 7, 1998, alleging his disability began on November 9, 1994.  (R. 76–78).  The application received consideration but was denied on December 8, 1998.  (R. 62–63).  Plaintiff appealed for recon-

sideration on January 22, 1999, yet, once again, on February 28, 1999, plaintiff's application was denied. (R. 64, 69–70). On June 4, 1999, a hearing was held before Administrative Law Judge Richard J. Kallsnick ("ALJ"). On August 11, 1999, the ALJ rendered a decision unfavorable to plaintiff. (R. 12–29). Plaintiff requested review by the Appeals Council, and on May 4, 2001, the Appeals Council declined plaintiff's request for review. (R. 5–6). Plaintiff brings the instant action seeking a reversal of defendant's decision.

## II. STANDARD OF REVIEW

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Substantial evidence is more than a scintilla and is that evidence that a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The court will also determine whether defendant applied the correct legal standards. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

During its review, however, the court will not reweigh the evidence or substitute its judgment for defendant's. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). On the other hand, the court will not merely accept defendant's findings. *See Claassen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985). Any new evidence not considered by the ALJ but submitted to the Appeals Council and considered in denying a request for review becomes part of the administrative record and will be considered by the court. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.1994).

In order to determine whether a Social Security claimant is disabled, the Commis-sioner has developed a five-step sequential evaluation. 20 C.F.R. § 404.1520. *See also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir.1988). If the claimant fails at any of the steps where he or she bears the burden of proof, consideration of any subsequent steps is rendered unnecessary. *See id.* at 750 ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The claimant bears the burden of proof at steps one through four.

The initial inquiry is whether the claimant is engaged in substantial gainful activity. If not, the second step requires the fact finder to determine whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140–41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If the claimant does not have a severe impairment, step three entails determining "whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 141, 107 S.Ct. 2287. If there is no such equivalency, the claimant must show at step four that the "impairment prevents the claimant from performing work he has performed in the past." *Id.* At the fifth step, the fact finder must determine whether the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education, and work experience." *Id.* at 142, 107 S.Ct. 2287. The Commissioner bears the burden of proof at step five. *See id.* at 146 n. 5, 107 S.Ct. 2287.

## III. FACTUAL HISTORY

### A. Plaintiff's Physical Condition/Medical Records

Plaintiff suffered an on-the-job injury on September 13, 1994. Plaintiff apparently

slipped and fell backwards striking his hip and lower back on a concrete floor. Plaintiff's allegations of disability stem directly from this singular injury.

Plaintiff's initial complaints of lower back, hip, and leg pain were addressed and treated by James T. Clayton, D.C. A MRI performed on November 1, 1994, showed mild central disc bulge at the L5–S1 level. (R. 150). These findings reappeared on a MRI performed on August 16, 1995. (R. 141). On August 21, 1995, Dr. Clayton referred plaintiff to R.E. Kaplan, M.D. for further treatment of his low back and left lower extremity pain and lumbosacral radiculopathy. (R. 139). Due to plaintiff's "failure to improve despite conservative care," during the summer and fall of 1995, Dr. Kaplan treated plaintiff with a series of three epidural steroid injections. (R. 139, 132–39).

In November of 1994, Dr. Clayton had also referred plaintiff to a back surgeon, G. David Casper, M.D. (R. 169). In his 1994 notes, Dr. Casper opined that plaintiff was not a good candidate for surgical intervention. (*Id.*). However, in December of 1995, Dr. Casper stated: "I currently feel that this patient now has exhausted all conservative measures, and is a candidate for laser assisted disc decompression at the L5–S1 region." (R. 170). Thereafter, on January 3, 1996, plaintiff underwent disc decompression surgery. Plaintiff participated in physical therapy following his surgery. (R. 172–214).

Plaintiff next presented to Steven E. Gaede, M.D. on February 13, 1997. (R. 224). Dr. Gaede's reports reveal plaintiff was still complaining "of pain in the left lower back at the sacroiliac region with radiation down the posterior aspect of his leg to the upper posterior calf." (R. 225). Dr. Gaede opined plaintiff may be suffering from sacroiliac joint syndrome. (R. 226). To treat plaintiff's pain, Dr. Gaede recommended plaintiff be seen by Scott

Anthony, D.O. Dr. Gaede, however, was reserved in his belief that further medical intervention could aid plaintiff. (*Id.*) ("unless he is able to get some fairly dramatic relief with sacroiliac joint treatment, I cannot hold out much hope for him to get further relief with medical intervention").

Plaintiff was first seen by Dr. Anthony on March 11, 1997, for a sacroiliac joint injection. (R. 270). After a follow-up visit, Dr. Anthony opined that while the procedure was helpful as a diagnostic tool, plaintiff only received short-term pain relief from the injection. (R. 267). Plaintiff, however, underwent a series of three injections. (R. 265). On November 6, 1997, Dr. Gaede opined plaintiff had reached maximum medical improvement, with no "potential for significant improvement with further therapy." (R. 216). Dr. Gaede did note plaintiff may need intermittent medication and even injections, and he recommended Dr. Anthony for such care. (*Id.*). The medical record before the court indicates plaintiff last received a sacroiliac joint injection on November 5, 1998. (R. 260). In a letter to the ALJ dated June 10, 1999, Dr. Anthony opined plaintiff "will require medication and injections on an ongoing basis. In my medical opinion, he remains disabled and unable to sustain fulltime work in any capacity as a result of chronic pain." (R. 298).

Throughout the time relevant to this matter, plaintiff was seen by several doctors on a consultative basis as requested by particular governmental agencies. Most notably, plaintiff was examined by Robert E. Paul, M.D. on two occasions. (R.287–297A). Plaintiff also presented to Varsha Sikka, M.D. (R. 242) and Phillip J. Knight, M.D. (R. 228).

**B. Plaintiff's Testimony Before the ALJ**

Plaintiff testified to severe restrictions due to his lower back and leg pain. In

particular, plaintiff noted that he can lift no more than a gallon of milk without increased pain, and when he walks, his pain causes him to feel like he is being stuck with an ice pick. (R. 42). Furthermore, plaintiff testified the farthest he could walk would be a quarter to half mile, and he can only drive a vehicle three to five miles before the pain becomes unbearable. (R. 43). As for standing, plaintiff stated he is only able to stand in one place for five to ten minutes. (*Id.*). According, to plaintiff, the pain requires he spend most of his day sitting in a recliner with both legs elevated. (*Id.*).

Plaintiff is a self-described "housewife." (R. 44). He is married with three young children. (*Id.*). According to plaintiff, he attempts household chores but cannot do them very well. (*Id.*). His sons must help wash the dishes and empty the clothes out of the dryer. (*Id.*). He might try to cook once per week, but it must be quick because he cannot stand too long. (*Id.*). He takes care of his two-year old daughter, which, according to plaintiff, is difficult because of his inability to pick her up and lean over to change her diaper. (*Id.*). Plaintiff does some lawn work, but plaintiff stated he was only able to mow three or four times in the last two years. (R. 45).

As for his sleeping habits, plaintiff told the ALJ he generally stays up till four in the morning, then, with the aid of sleeping pills, he sleeps till ten. (*Id.*). According to plaintiff, the combination of pain medication and sleeping pills makes him "groggy" and unable to "think straight" during the day. (*Id.*). Although plaintiff participated in several recreational activities before his injury, presently his only recreation is sleep. (R. 48).

Plaintiff did receive a workers' compensation settlement of $15,000 for his on-the-job injury. (R. 50). Finally, plaintiff informed the ALJ that his doctors advised

him that any further surgery on his back may likely result in his paralyzation. (R. 51).

## C. ALJ's Findings

The ALJ's written decision contains the following findings:

1.  The claimant met the disability insured status requirements of the Act on November 4, 1994, the date the claimant stated he became unable to work, and has acquired sufficient quarters of coverage to remain insured throughout at least December 31, 1999.

2.  The claimant has not engaged in substantial gainful activity since November 9, 1994.

3.  The medical evidence establishes that the claimant has herniated disc at L5/S1, status post disc decompression at L5/S1 (1996), an impairment which is severe but which does not meet or equal the criteria of any of the impairments listed in [the Social Security regulations], and non-severe obesity.

4.  The degree of functional limitation the claimant alleges due to pain and other subjective complaints is not credible based on the reasons set forth herein.

5.  The claimant lacks the residual functional capacity to lift and carry more than 20 pounds occasionally and 10 pounds frequently, or perform tasks requiring more than occasional bending/stooping, crouching, crawling, and requires alternating positions from time to time (shift weight in chair, shift weight from one leg to the other), with mild to moderate chronic pain at a level to be noticeable to the claimant but not precluding attention and responsiveness, re-

lieved by medications that reduce symptoms and allow the claimant to remain alert in a work setting.

6. The claimant is unable to perform his past relevant work as foundry laborer, security guard, production helper, pulling unit operator, landscaper/groundskeeper, maintenance/repairer, and stocker/cleaner.

7. The claimant's capacity for the full range of light work is diminished by his inability to perform tasks requiring more than occasional bending/stooping, crouching, crawling, and requires alternating positions from time to time . . . .

8. On November 9, 1994, the claimant was 26 years old, a "younger individual."

9. The claimant has a high school education, plus associate's degree.

10. The claimant has skilled and semi-skilled work experience.

11. Based on an exertional capacity for light work, and the claimant's age, educational background, and work experience, [the Social Security regulations], would direct a conclusion of "not disabled." The same result would be reached without regard to transferability of work skills.

12. Although the claimant is unable to perform the full range of light work, he is capable of making an adjustment to work which exists in significant numbers in the national economy . . . .

13. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(R. 26–28).

## IV. DISCUSSION

Plaintiff alleges three primary instances of error within the ALJ's decision: (1) the ALJ erred in determining plaintiff's allegations of disabling pain were not credible; (2) the ALJ gave improper weight to the opinion of his treating doctor; and (3) the ALJ improperly determined plaintiff's RFC. The court will address these arguments in turn.

### A. Plaintiff's Credibility

Having determined plaintiff suffered from a severe physical impairment, which prohibited him from performing his past relevant work, the ALJ continued to the fifth step of the analytical framework. This process required the ALJ to formulate plaintiff's RFC and determine his ability to secure available alternative employment. The ALJ found, that while plaintiff surely suffers from some pain and discomfort, plaintiff's description of his severe limitations was not credible. (R. 20). The degree of limitation imposed by plaintiff's pain is critical, for at plaintiff's hearing, the vocational expert expressed serious doubt whether plaintiff could find alternative employment if his testimony regarding his limitations and pain were accepted as fully credible. (R. 59). The court will now consider whether substantial evidence exists supporting the ALJ's decision and whether the ALJ employed the correct legal standards in reaching his conclusion.

The seminal case of *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987), provides the analytical framework for considering allegations of disabling pain:

If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. The impairment or abnormality must be one which could reasonably be expected to produce the alleged pain . . . . If an appropriate nexus

does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling.

*Id.* at 163 (internal citation and quotation marks omitted). The initial phase of the inquiry, the objective impairment requirement, is met without regard to subjective evidence. *Williams v. Bowen,* 844 F.2d 748, 753 (10th Cir.1988). At the second phase, the relationship between the impairment and the pain alleged, only a loose nexus between the impairment and the claimed pain is required. *Luna,* 834 F.2d at 163. If an impairment is expected to produce some pain, allegations of disabling pain emanating from the impairment "are sufficiently consistent to satisfy this part of the evaluation process." *Id.* at 164. In the final phase, the decision maker will determine, by considering all relevant evidence, whether the claimant's pain is disabling. During this examination, the decision maker may judge the credibility of the claimant's assertions. *Id.*

In the case at bar, the ALJ's decision is imprecise in specifically detailing each phase of the analysis. His conclusions regarding the first and second stage are intermixed with his detailed discussion of plaintiff's credibility. The court will, therefore, consider each stage of the analysis in an attempt to ascertain whether the ALJ's final conclusion is supported by substantial evidence.

As to the first stage, there is no dispute plaintiff suffers from a bulging disc in his lower back. The two MRI scans are objective medical evidence revealing a pain-producing impairment. When considering whether a nexus exists between plaintiff's bulging disc and the alleged disabling pain under the second stage, plaintiff's subjective allegations of pain are taken as true. *Luna,* 834 F.2d at 163. The record contains multiple assertions by plaintiff that

his pain is remarkable and greatly reduces his productivity and quality of life. In addition, multiple medical records reveal plaintiff presented to his doctors complaining of lower back and leg pain. Because plaintiff need only show a "loose" nexus between his medically diagnosed condition and his alleged pain, the court finds that the above evidence satisfies the second phase of the *Luna* framework.

In the final phase of analysis, the ALJ, considering the objective and subjective evidence, concluded plaintiff's allegations of disabling pain were not credible. In reviewing the ALJ's decision, the court is reminded that "special deference is traditionally afforded a trier of fact who makes a credibility finding." *Williams,* 844 F.2d at 755 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir.1978)). *See also Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996). On the other hand, the court is cognizant of the fact "that the severity of pain is inherently subjective." *Luna,* 834 F.2d at 165. Therefore, the court will consider whether substantial evidence supports the ALJ's reasons for discounting plaintiff's subjective evidence. *See Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir.1995). Factors to be considered at this point include but are not limited to:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony and objective medical evidence.

*Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995) (internal citation and quotation

marks omitted). In making his determination, the ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Id.* at 391.

After reviewing the present ALJ's decision, in comparison with the available medical record, the court concludes the ALJ committed multiple errors within his credibility determination. While the ALJ rested his decision primarily on perceived inconsistencies between plaintiff's hearing testimony and the medical record, he also included several additional observations, which he surmised reflected negatively on plaintiff's credibility. It is with these statements the court finds error necessitating a remand.

■ First, the court finds the ALJ improperly considered plaintiff's receipt of funds pursuant to his workers' compensation claim in adjudging plaintiff's motivation to work. (R. 21) ("The undersigned finds that the claimant has not been highly motivated to return to work, as that obviously would have affected his workers' compensation claim, which was settled long after the injury."). In *Hinton v. Massanari*, the Tenth Circuit addressed this exact issue and stated:

> This statement ["the monies she has received and might receive with respect to the Workers' Compensation claim may possibly have given claimant less motivation to return to the work force"] was improper and undercuts the objectivity of the ALJ's opinion. Congress drafted the social security statutes with the expectation that claimants could receive both workers' compensation and disability benefits for on-the-job injuries. 42 U.S.C. § 424a; *Richardson v. Belcher*, 404 U.S. 78, 82–83, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). *Thus, [claimant's] receipt of such benefits has no bearing on her credibility. Cf. Eichel v. N.Y.*

*Cent. R.R.*, 375 U.S. 253, 255, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) ("it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act ... were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act").

No. 00–3408, 2001 WL 744971, at *1 n. 1 (10th Cir. July 3, 2001) (emphasis added). *See also Simmonds v. Massanari*, 160 F.Supp.2d 1235, 1242 (D.Kan.2001) (finding ALJ improperly considered workers' compensation funds while determining claimant's motivation and/or credibility) (citing *Hinton*, 2001 WL 744971 at *1 n. 1).

Second, the court finds the ALJ applied the wrong legal standard in considering whether plaintiff failed to actively follow prescribed courses of medical treatment. The ALJ found plaintiff failed to participate in two treatment plans: (1) physical therapy and (2) weight reduction. As noted above, after his 1996 surgery, plaintiff was enrolled in physical therapy. As to the effectiveness of this therapy, the ALJ observed: "[Plaintiff's] physical therapist noted that benefits were not as hoped due to the claimant's poor effort and attendance. This is consistent with low motivation and/or less distress than alleged." (R. 22). In regards to plaintiff's weight, the ALJ stated: "[T]he claimant is substantially overweight for his height .... This overweight condition undoubtably has some effect on his comfort level, back strain, and ability to get comfortable at night. However, instead of losing weight, he gained some weight." (R. 22).

■ In *Frey v. Bowen*, the Tenth Circuit stated:

> In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treat-

ment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

816 F.2d 508, 517 (10th Cir.1987). The ALJ utterly failed to consider any of the above factors in his apparent determination that plaintiff's alleged refusal to participate in physical therapy and a weight loss program casts doubt on his credibility. In fact, the ALJ's statements regarding plaintiff's weight are derived solely from his personal belief, for there is absolutely no indication in the record that any medical professional opined that a reduction in plaintiff's weight would reduce his "back strain" or more specifically restore his ability to work.

■ Third, the court finds the ALJ's determination that plaintiff did not vigorously seek relief through treatment is not supported by substantial evidence. As noted above, "the extensiveness of the attempts (medical or monmedical) to obtain relief" and "the frequency of medical contacts" are useful factors in weighing a plaintiff's credibility. *Kepler*, 68 F.3d at 391. In the present case, the ALJ stated:

> Nor is there any showing that he does anything else to alleviate symptoms, other than take medications, and even those prescriptions are relatively recent. The undersigned is not convinced that the claimant's discomfort is or was as severe as alleged if the claimant is not willing to put forth some effort to alleviate his symptoms in an area in which he could himself effect a change.

(R. 22). The court is bewildered by the ALJ's position. The record demonstrates that since his accident in 1994, plaintiff has sought treatment from multiple physicians and specialists in an attempt to alleviate his symptoms. He has endured both conservative and intrusive medical procedures. The ALJ's perception that plaintiff should have done more to address his symptoms directly collides with Dr. Gaede's opinion that plaintiff has reached maximum medical improvement.[2]  (R. 216). In fact, Dr. Gaede states plaintiff's *only* available course of treatment is medication and intermittent injections. (*Id.*). There is no evidence, let alone substantial evidence, supporting the ALJ's decision to criticize plaintiff's sole use of medication to address his pain.

■ Fourth, the ALJ's conclusion that plaintiff is less than credible when describing some of his daily activities is also not supported by substantial evidence. During his hearing, plaintiff testified to how he can no longer pursue fishing as a recreational activity. (R. 48). Specifically, plaintiff described how he can no longer physically cast his line. (*Id.*). On the other hand, in a report completed by Dr. Paul, plaintiff states his hobbies include shortwave radio and learning Morse Code. (R. 289). Armed with this information, the ALJ makes the following observation: "[Plaintiff] also testified that he cannot even go fishing with his children any more. *However*, he told Dr. Paul that he retains an interest in shortwave radio and learning Morse Code." (R. 22) (emphasis added). Without explanation, the ALJ apparently finds plaintiff's statements incongruent-indicating a low level of credibility. The court finds no support for this proposition. Simply put, there is no inconsistency in a person being unable to physically cast a fishing rod while at the same time being

---

2. The ALJ suggests plaintiff could have lost weight in order to alleviate his symptoms, yet, as noted above, the ALJ fails to cite to any medical record indicating such action would have been significantly helpful.

physically able to operate a radio or exert mental energy in learning a new skill. Any weight the ALJ gave to this supposed contradiction was erroneous.

The above enumerated errors compel the court to remand this case back to defendant. In doing so, the court does not reach a conclusion regarding the ALJ's ultimate decision concerning plaintiff's credibility. Instead, the court only finds the ALJ's use of the above factors within his analysis was improper. On remand, defendant is to consider plaintiff's allegation of disabling pain in strict accordance with the authorities cited above.

### B. Opinion of Treating Doctor

As noted above, Dr. Anthony clearly opined plaintiff was disabled and unable to work due to his back and leg pain. (R. 298). In contrast, Dr. Paul, as a consulting doctor, opined plaintiff was not disabled and could return to work with only a medium [3] work restriction. (R. 290). In reconciling these divergent opinions, the ALJ noted: "Dr. Anthony's opinion cannot be given greater weight than that of Dr. Paul." (R. 24). Plaintiff asserts the ALJ failed to demonstrate good cause for rejecting Dr. Anthony's opinion.

■■■ At first blush, the ALJ's conclusion is troubling, for it is well established that "the [Commissioner] must give substantial weight to the evidence and opinion of the claimant's treating physician, unless good cause is shown for rejecting it." *Washington v. Shalala,* 37 F.3d 1437, 1440 (10th Cir.1994) (internal citation and quotation marks omitted). The Tenth Circuit has made clear that "[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports 'to see

if they outweigh the treating physician's report, not the other way around.'" *Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 289–90 (10th Cir.1995) (alteration omitted) (quoting *Reyes v. Bowen,* 845 F.2d 242, 245 (10th Cir.1988)). *See also Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.1994) (noting that when a treating doctor proffers an opinion regarding the claimant's impairment or limitations, defendant must accord "controlling weight to that type of opinion if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record"). In particular, the ALJ *must* give specific, legitimate reasons for rejecting the treating physician's opinion. *Id.* Although a treating doctor may opine that a claimant is disabled, the opinion "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano,* 26 F.3d at 1029.

After reviewing the ALJ's decision in the present case, the court concurs with plaintiff and finds the ALJ failed to meet the above standard for rejecting a treating physician's opinion. The ALJ's decision is completely devoid of specific justifications directly tied to the medical record. *See Goatcher,* 52 F.3d at 290 ("The ALJ did not give [the treating physician]'s reports the detailed and specific review that the agency's own regulation requires."). The ALJ's decision devotes a total of three sentences to fulfilling his burden. In total, the decision states:

Dr. Anthony does not provide measured limitations, and the mere fact of requiring medications and injections does not require a finding of disability. Different examiners have found marked differ-

---

**3.** Dr. Paul gave plaintiff the following restrictions: (1) no lifting over fifty pounds; (2)

frequent lifting up to twenty pounds; and (3) constant lifting up to ten pounds. (R. 290).

ences in the claimant's ability to perform range of motion maneuvers, and two different examiners found the claimant's limited responses to be invalid due to discrepancies. Therefore, Dr. Anthony's opinion is not medically supported by clinical observations in his own record or by the findings and conclusions of other acceptable examiners.

(R. 24). The ALJ's cursory review is simply inadequate in light of the standard elucidated above. At a minimum, the ALJ must specifically identify those medical records allegedly inconsistent with Dr. Anthony's opinion. On remand, therefore, any decision to grant Dr. Anthony's opinion less than controlling weight must be supported by specific and legitimate reasons.

### C. Plaintiff's RFC

Considering the dependent interplay of plaintiff's credibility and his RFC, the court declines to address the merits of plaintiff's final allegation of error.

## V. CONCLUSION

The court remands this action back to defendant for reconsideration of plaintiff's allegations of disabling pain and for reconsideration of the medical evidence under the appropriate legal standard. Such reconsideration necessarily dictates defendant look anew at plaintiff's RFC and his ability to secure employment under step five of the established analytical framework.

**IT IS THEREFORE BY THIS COURT ORDERED** that this action be remanded to defendant for further proceedings consistent with this opinion.